IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-01115-WJM-KMT

JAMES COLE, individual,

      Plaintiff,

v.

WEATHERFORD INTERNATIONAL, LLC, f/k/a WEATHERFORD INTERNATIONAL, INC., a Delaware corporation, and WEATHERFORD U.S., L.P., a Louisiana corporation,

      Defendants.

---

## RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

      Weatherford International, LLC and Weatherford U.S., L.P. (collectively "Weatherford" or "Defendants"), through their undersigned attorneys, hereby submit the following Response in Opposition to Plaintiff's Motion for Partial Summary Judgment [Doc. #34] ("Plaintiff's Motion") and respectfully request that the Court deny Plaintiff's Motion for the reasons set forth below.

## <u>INTRODUCTION</u>

      Plaintiff James Cole ("Plaintiff" or "Cole") has asserted a single claim of disability discrimination against Weatherford, his former employer, under the Americans with Disabilities Act ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"). On March 20, 2015, both parties filed motions pursuant to Fed. R. Civ. P. 56, contending that no genuine issue of material fact exists and that Cole's discrimination claim may be decided as a matter of law.

*See* Doc. #34; Doc. #36.  For the reasons set forth in detail below, Cole cannot establish a prima facie case of disability discrimination and cannot pursue his failure to accommodate claim under a "regarded as" theory.  Therefore, Plaintiff is not entitled to partial summary judgment and the Court should deny Plaintiff's Motion in its entirety.

## RESPONSE TO MOVANT'S MATERIAL FACTS

1.     Admitted.

2.     Admitted.

3.     Admitted.

4.     Admitted.

5.     Admitted.

6.     Admitted.

7.     Admitted that Weatherford employed Cole from March 4, 2012 to March 10, 2012.  Weatherford terminated Cole's employment effective March 11, 2012.  *See* Ex. 16.

8.     Admitted that Plaintiff accurately quotes Weatherford's website.

9.     Admitted that Weatherford International Ltd. had approximately 70,000 employees as of December 31, 2012.

10.     Admitted.

11.     Admitted.

12.     Admitted that a "Valid Commercial Driver's License or the ability to obtain one" was a minimum qualification for Weatherford's Senior Equipment Operator (i.e., Equipment Operator IV) position in 2012.  *See* Ex. 6 to Doc. #34.

13.     Admitted.

14.     Admitted that Cole participated in Weatherford's orientation the week of March 5, 2012.  The remaining facts in paragraph 14 of Plaintiff's Material Facts are denied because the cited testimony does not refer to Cole's place of residence or where he may have traveled from to attend orientation.  *See* Ex. 8 to Doc. #34 at 53:22-54:55.

15.     Admitted that, on March 7, 2012, Dr. Kalevik conducted a Department of Transportation ("DOT") medical examination of Cole.  Admitted that the DOT medical examination was required of Cole by Weatherford.

16.     Admitted that Cole disclosed to Dr. Kalevik that he had back surgery in 2011 and had stents placed in his heart in April 2011.  *See* Ex. G to Doc. #36; Ex. A to Doc. #36 at 90:10-12, 131:1-3.

17.     Weatherford is without sufficient information in the record or otherwise to form a belief as to the truth of the statements in paragraph 17 of Plaintiff's Material Facts and therefore denies them.

18.     Weatherford is without sufficient information in the record or otherwise to form a belief as to the truth of the statements in paragraph 18 of Plaintiff's Material Facts and therefore denies them.

19.     Admitted that, after Cole left Dr. Kalevik's office, Dr. Kalevik's office called Weatherford and spoke with Phyllis Wynn-Grove, a former Weatherford Human Resources representative.  *See* Ex. H to Doc. #36 at 4:15-6:25; Ex. J to Doc. #36 at 7:23-8:10, 10:21-11:1, 12:11-22.  Denied that Plaintiff accurately paraphrases or quotes Wynn-Grove's deposition testimony with respect to the remaining statements contained in paragraph 19 of Plaintiff's Material Facts.  *See* Ex. 4 to Doc. #34 at 11:8-13:17.

20.     Denied that Plaintiff accurately paraphrases Mora's deposition testimony in paragraph 20 of Plaintiff's Material Facts.  *See* Ex. 11 to Doc. #34 at 14:16-19.

21.     Admitted that, to the best of Weatherford's knowledge, no representative from Dr. Kalevik's office told any employee of Weatherford that Cole "could not pass a DOT physical." *See* Ex. 12 to Doc. #34.

22.     Admitted that no DOT medical examiner stated or reported to Weatherford either that Cole met the physical qualification standards in 49 CFR § 391.41 for commercial drivers or that Cole did not meet those standards.  *See* Ex. 12 to Doc. #34.

23.     Denied that Plaintiff accurately paraphrases Wynn-Grove's deposition testimony in paragraph 23 of Plaintiff's Material Facts.  *See* Ex. 4 to Doc. #34 at 41:21-42:2.

24.     Denied.  Weatherford terminated Cole's employment effective March 11, 2012. *See* Ex. 16.

25.     Denied.  *See* Ex. 11 to Doc. #34 at 58:5-15; *id.* at 57:17-23 ("My question is: Weatherford knew that Dr. Kalevik did not finish the DOT physical for Jim Cole, didn't they? . . . A. I can't speak for Dr. Kalevik or the HR representatives who were there at the time."); Ex. 17 at 90:2-8 ("Q. . . It was your understanding, though, that Mr. Cole's physical wasn't complete . . . isn't that correct? . . . A. Not that his physical wasn't complete . . .").

26.     Admitted that Wynn-Grove testified that Brannon "basically said" to Wynn Grove "that [Plaintiff] would be considered a high risk and that [Brannon] really didn't see any need to go any further."  Ex. 4 to Doc. #34 at 14:10-13.  Denied that this statement was made to Cole or was made at the time of Cole's termination.  *See id.*

27.     Admitted that, on March 8, 2012, Cole was informed that he would not be employed by Weatherford as an Equipment Operator IV.  Ex. I to Doc. #36 at 3; Ex. A to Doc. #36 at 100:6-14, 103:1-16.  Denied that the deposition testimony cited by Plaintiff states that Cole did not have an opportunity to have his physicians transmit any information to Weatherford and, therefore, Weatherford denies those allegations.  *See* Ex. 8 to Doc. #34 at 100:15-20.  Denied that Wynn-Grove told Cole he could not work for Weatherford "because of his health history."  *See* Ex. 17 at 23:21:24-1 ("I had to tell him, Mr. Cole, based on the information we've received, we don't think this is a good fit for Weatherford.  And that's when he said to me, Well, why is that?  He wanted to know why that was.  And I said, Basically, just looking over everything, we just don't feel this is a good fit . . .").

28.     The statement contained in paragraph 28 of Plaintiff's Material Facts is not a statement of fact but a legal conclusion, and is disputed by Weatherford.  Wynn-Grove admittedly did not participate in making the termination decision and her generalized statements about individuals with "back trouble" do not support the legal conclusion contained in paragraph 28 of Plaintiff's Material Facts.  *See* Ex. 4 to Doc. #34 at 81:5-82:4; Ex. 17 at 19:22-20:15.

29.     Denied.  The testimony cited does not support that Cole "said [to Wynn-Grove] he could submit his medical records from his physicians, which would clear him to obtain his CDL, and thereby pass his physical exam."  Plaintiff's Material Facts ¶ 29; *see* Ex. 8 to Doc. #34 at 100:6-24 ("I stood there and stared at her for a second, and I'm like, well I'm still waiting for medical records.  And she goes, it doesn't matter, you can't work for Weatherford.").

30.     Admitted.

31.     Admitted that Cole's personal physicians never submitted any medical documentation concerning Cole's health conditions or his physical qualifications to Dr. Kalevik or Weatherford.  Denied that Weatherford did not "allow" Cole or his physicians to submit such documentation.  *See* Ex. 18 at 34:18-21 ("If Mr. Cole would have provided additional documentation, even after the fact, there's no doubt he would have been rehired, so to speak, and placed in that equipment operator role.").

32.     Denied.  The statement contained in paragraph 28 of Plaintiff's Material Facts misstates Wynn-Grove's testimony and misrepresents to whom Brannon was allegedly speaking and when such communication occurred.  *See* Ex. 4 to Doc. #34 at 81:15-18 ("[S]he said, It is true that a doctor can give additional information.  But, the history just shows you point blank that this could be trouble down the line, that she could do a judgment call."); Ex. 8 to Doc. #34 at 100:6-24 (making clear Brannon was not present during Cole's discussion with Wynn-Grove on the morning of March 8, 2012); Ex. 19 at 122:16-123:5.

33.     Admitted that paragraph 33 of Plaintiff's Material Facts accurately paraphrases Cole's testimony that he told Brannon he could pass the DOT physical if he presented additional medical records to Dr. Kalevik.  Denied that the cited testimony supports that Cole met with Brannon on the day prior or that Brannon stated "the matter was closed."  *See* Ex. 8 to Doc. #34 at 111:5-112:16; Ex. 19 at 122:16-123:5.

34.     Denied.  *See* Ex. G to Doc. #36 (reflecting Cole's Medical Examination Report For Commercial Driver Fitness Determination was faxed by Dr. Kalevik's office to Weatherford on March 8, 2012).

35.     Admitted that Cole obtained a DOT Medical Examiner's Certificate from Chiropractor David Hansen certifying he met the qualifications for commercial driver fitness as of March 29, 2012.  *See* Ex. 15 to Doc. #34.

36.     Admitted that the Senior Equipment Operator job description states that Senior Equipment Operators, among other things, "[m]ust obtain CDL within 90 days of hire date."  Ex. 6 to Doc. #34.

## LEGAL ARGUMENT

**I.     The Court should deny Cole's Motion for Partial Summary Judgment on his discrimination claim under the ADA**

In this lawsuit, Cole asserts a single claim of disability discrimination under the ADA. To prove a prima facie case of discriminatory discharge, Cole must show: (1) he was disabled within the meaning of the ADA; (2) he was qualified to perform, either with or without reasonable accommodation, the essential functions of the desired job; and (3) Weatherford terminated him because of his disability.  *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 912 n.4 (10th Cir. 2004).  Because Cole cannot establish these elements, the Court should deny Plaintiff's Motion.

**A.     Cole does not contend he had an actual disability at the time of his termination and cannot establish he was regarded as disabled within the meaning of the ADA**

With respect to the first element of his prima facie case, Cole argues only that he was "regarded as" disabled by Weatherford.  *See* Doc. #34 at 10.  Cole does not contend that he was actually disabled or had a record of a disability, and seeks partial summary judgment solely on a "regarded as" claim under the ADA.  *See id.*

7

A person satisfies the requirement of being "regarded as" disabled if he establishes that he "has been subject to an action prohibited [under the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A).  An "impairment," in turn, is defined as "any physiological disorder or condition," "cosmetic disfigurement," or "anatomical loss" affecting one or more body systems.  29 C.F.R. § 1630.2.

"[T]he mere fact of awareness" of an impairment or a limitation is insufficient to demonstrate that a defendant regarded a plaintiff as disabled for purposes of summary judgment. *Thalos v. Dillon Cos.*, 86 F. Supp. 2d 1079, 1085 (D. Colo. 2000); *Ainsworth v. Indep. Sch. Dist. No. 3 of Tulsa Cnty., Okla.*, 232 F. App'x 765, 771 (10th Cir. 2007) ("[I]t does not follow that a reasonable inference of discrimination may be drawn from mere awareness of a disability or that mere awareness is affirmative evidence that may establish the third element of the prima facie case."); *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1219 (10th Cir. 2007) ("An employer's knowledge of an impairment alone is insufficient to establish the employer regarded the employee as disabled.").

Instead, Cole must establish that the decision-maker mistakenly believed that he had a physical impairment *that substantially limits one or more major life activities*, or mistakenly believed that an actual, nonlimiting impairment *substantially limits one or more major life activities*.  *See Thalos*, 86 F. Supp. 2d at 1085-86; *Sutton v. United Air Lines*, 527 U.S. 471 (1999).

Cole cannot establish the first element of his prima facie case because there is no evidence that the decision-maker with respect to his termination of employment – Michelle

8

Brannon – mistakenly believed that he was substantially limited in any major life activity.  The undisputed evidence demonstrates that Weatherford decided to terminate Cole's employment after learning that Cole had failed to obtain a Department of Transportation ("DOT") Medical Examiner's Certificate during orientation.  However, Cole cannot prove as a matter of law that Brannon perceived him as substantially limited in any major life activity or terminated him because of any such perception.

In support of his claim that Weatherford regarded him as disabled, Cole contends (1) Weatherford had knowledge of his "cardiac and back history" from a representative of Dr. Kalevik's office prior to his termination, (2) Brannon made comments to Wynn-Grove about Cole's "health history" and that he was "too high of a risk for Weatherford," and (3) Wynn-Grove testified in her deposition that "[m]ost people that have had back surgery or have back trouble, they have some type of limitation on what they can lift  and what they cannot lift."  Doc. #34 at 11.  Each of these contentions individually, and considered in sum, is insufficient to establish Weatherford regarded Cole as substantially limited in any major life activity.

Cole cites only one ambiguous snippet of deposition testimony by Wynn-Grove suggesting that Brannon had knowledge of Cole's medical conditions from a telephone call with Dr. Kalevik's office.  *See* Ex. 4 to Doc. #34 at 11:8-13:17 ("Q. And did you receive that call about Mr. Cole?  A. Yes.  Q. Were you the one who answered that call?  A. I answered it.  And then Michelle Brannon just wanted to make sure, so we both spoke with the – the clinic called and asked for me.").  In fact, Plaintiff has failed to establish Dr. Kalevik's office even notified Weatherford of Plaintiff's heart and back surgeries over the phone.

When asked about her conversation with Dr. Kalevik's office, Wynn-Grove recalled generally, "I think he [Cole] had had some previous heart trouble . . . I believe there was something a little bit with his blood pressure, but it wasn't out of control." Ex. 4 to Doc. #34 at 13:2-7.[1]  However, with respect to what information was provided by Dr. Kalevik's office, Wynn-Grove repeatedly testified that she was told by Dr. Kalevik's office to look at Cole's health history, but did not testify to receiving details about his heart or back conditions over the phone. *See, e.g.*, Ex. 4 to Doc. #34 at 13:8-11 ("The medical company just said, We just think it's important that you see the history that he has.  That was basically it."); Ex. 17 at 16:18-17:1 ("Q. So let's back up.  Help me understand the chain of events.  You get a call from the clinic and somebody on the phone says what?  A.  The person on the phone said, I have the following three people's physicals; two of them were – you need to kind of just look at their history.  They said, 'We're not saying don't hire, that's totally up to you, but make sure you look at their history with their health . . .'").

The testimony cited by Plaintiff falls far short of establishing Brannon had knowledge of or regarded Cole as having any substantial limitation on a major life activity.  Even if Cole could establish Brannon was aware of his heart or back condition, Cole cannot establish that Brannon was aware of any impairment that was not "transitory" and "minor."  *See* 42 U.S.C. § 12102(3)(B).  An individual does not satisfy the requirement of being "regarded as" where the employer is only aware of impairments that are "transitory" and "minor."  *Id.*  An impairment is "transitory" if it has an actual or expected duration of less than six months.  *Id.*

---

[1] Wynn-Grove may have learned about these medical conditions from the DOT Medical Examiner's Report, from Cole after he had been notified of his termination, in conjunction with Cole's Equal Employment Opportunity Commission Charge of Discrimination, or any number of other ways after the termination decision had been made by Brannon.

Whether a condition is "transitory" and "minor" must be determined objectively.  29 C.F.R. § 1630.15(f).  Here, even if Brannon was aware of Cole's medical conditions, both conditions were objectively "transitory" and "minor."  *See id.*  Cole admitted that his back injury is not a disability; admitted that he had no restrictions or limitations relating to his back; and denied to Dr. Kalevik that he had limitations or restrictions associated with his prior surgery. *See, e.g.*, Ex. 19 at 57:14-58:2; Ex. G to Doc. #36.  Cole admitted he was unaware of his heart attack at the time it occurred; admitted that he fully recovered in roughly six weeks; admitted that he had no restrictions following his heart attack; and explicitly denied having any limitations or restrictions associated with his medical condition or surgery.  *See, e.g.*, Ex. A to Doc. #36 at 91:1-92:12, 142:8-11; Ex. G to Doc. #36; Ex. 19 at 57:14-58:2.  Thus, even if Brannon was aware of either medical condition experienced by Cole, there are no facts suggesting she regarded his medical condition as anything other than "transitory" or "minor."  *See* 29 C.F.R. § 1630.15(f).[2]

The comments allegedly made by Brannon to Wynn-Grove about Cole's "health history" and that he was "too high of a risk for Weatherford" are insufficient to establish Brannon regarded him as disabled.  Assuming for present purposes this testimony is admissible, it fails to identify any major life activity, any substantial limitation, or otherwise demonstrate Brannon perceived Cole as having a substantial limitation on any major life activity.

Furthermore, Wynn-Grove's alleged perceptions about "most people that have had back surgery or have back trouble" are insufficient to establish Weatherford regarded Cole as disabled for purposes of his termination of employment.  Ex. 4 to Doc. #34 at 81:5-82:4; *see* Ex. 17 at

---

[2] Cole himself points out that Weatherford had no knowledge from any physician that his medical conditions would impair his job performance.  *See* Doc. #34 at 11.

19:22-20:15.  It is undisputed that Wynn-Grove did not participate in making the decision to terminate Cole; thus, her perceptions or opinions about "most people that have had back surgery or have back trouble" are immaterial and inapposite with respect to whether any *decision-maker* regarded *Cole* as limited or disabled.[3]  *Id.*  Notably, Wynn-Grove was a non-management employee with no authority to make termination decisions and there is no evidence she influenced or participated in making the decision to terminate Cole's employment.  *See, e.g.,* Ex. 17 at 19:22-20:1 ("None of the HR reps could make a decision to fire anybody.  That had to come from the . . . manager.").

Finally, even if Weatherford perceived Cole as unable to obtain a DOT Medical Examiner's Certificate at the time of his termination, obtaining a DOT Medical Examiner's Certificate is not a major life activity, and Cole fails to present any authority that it could be considered one by the Court.  An individual may fail to obtain a DOT Medical Examiner's Certificate for any number of reasons, such as illegal drug use, uncorrected visual acuity of less than 20/40, or the inability to recognize certain colors, which do not constitute disabilities under the ADA.  *See* 29 C.F.R. § 1630.2(j)(vi); 42 U.S.C. § 12114; 29 C.F.R. § 391.41(b)(10) & (12).  Thus, even if Weatherford believed Cole was unable to pass a DOT Medical Examination at the time of his termination, there is no authority to support that it could be equated to regarding him as substantially limited in any major life activity as a matter of law.[4]

---

[3] At summary judgment, Plaintiff is contending for the first time that Weatherford regarded him as disabled in connection with his back condition.

[4] Cole cannot credibly argue that Weatherford regarded him as substantially limited in his ability to work, as it is undisputed that Weatherford offered Cole a Warehouse position (which does not require a Commercial Driver's License) prior to his termination.  *See* Ex. A to Doc. #36 at 109:8-17; Ex. J to Doc. #36 at 15:10-11; Ex. K to Doc. #36.

Because Cole cannot establish Weatherford regarded him as disabled, his prima facie case of discrimination under the ADA fails and the Court should deny Plaintiff's Motion.

**B.      Cole was not qualified to perform the essential functions of the Equipment Operator IV position at the time of his termination**

Determining whether a disabled individual is "qualified" for purposes of establishing the second prong of a prima facie case under the ADA involves a two-part inquiry: (1) "whether the individual can perform the essential functions of the job;" and (2) "whether any reasonable accommodation by the employer would enable [the plaintiff] to perform those functions." *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1118 (10th Cir. 2004) (citation omitted).

In his Motion, Cole does not dispute that passing the DOT medical examination and obtaining a Commercial Driver's License ("CDL") are essential functions of the Equipment Operator IV position. *See* Doc. #34 at 12-13.  Cole also does not dispute that he did not pass the DOT medical examination prior to his termination by Weatherford. *See id.*  Thus, the Court may assume, for purposes of Plaintiff's Motion, that Plaintiff concedes he was unable to perform the essential functions of the position, without accommodation, at the time of his termination.

With respect to the second part of the "qualified" analysis, Cole argues he was qualified for the Equipment Operator IV position because he could have passed a DOT medical examination within ninety days following his hire by Weatherford, had he been provided with an accommodation in the form of additional time to submit medical documentation and pass a DOT medical examination prior to his termination.[5]  *See* Doc. #34 at 12-13.

---

[5] Cole argues he should have been given ninety days to pass his DOT medical examination because Equipment Operator IVs were allowed ninety days to obtain a valid CDL if they did not already possess one. *See* Doc. #34 at 12-13.  There is no basis in fact for Plaintiff's assertion that this is a "logical extension." *Id.*  Passing a DOT medical examination is the first of

Plaintiff's argument is unpersuasive for two reasons.  First, it is undisputed that Cole did not request any accommodation prior to being notified of his termination.  *See, e.g.*, Ex. A to Doc. #36 at 100:6-25; *Malipurathu v. Jones*, 2013 WL 3821009, at *13 (W.D. Okla. July 23, 2013) (letter "cannot be construed as a request for accommodation" where it was not received until after the plaintiff was discharged) *aff'd,* 563 F. App'x 646 (10th Cir. 2014); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 929 n.3 (7th Cir. 2001) (plaintiff cannot wait until after dismissal to request an accommodation for the first time).  It is undisputed that Cole waited to advise Weatherford of his need for additional time to submit medical documentation or otherwise pass his DOT medical examination until after he was notified of his termination, at least 18 hours following his DOT medical examination.  *See* Doc. #34 at 13.  Thus, Cole cannot prove that, as a "precondition to suit," he timely requested this accommodation.  *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 744 (10th Cir. 2013) ("[A]s a precondition to suit, employees have the burden to request accommodation unless the employer has foreclosed the interactive process through its policies or explicit actions.") (internal quotations omitted).

Second, and also fatal to Cole's claim, Weatherford had no duty to provide Cole with an accommodation because he was not actually disabled under the ADA.  As explained previously, Plaintiff claims he is protected by the ADA "because Weatherford regarded or perceived him as

---

several prerequisites to obtaining a CDL, including securing a Commercial Learners Permit, passing a driving record check, practicing operating a commercial motor vehicle under supervision, and passing a Skills test.  *See* http://www.fmcsa.dot.gov/registration/commercial-drivers-license/how-do-i-get-commercial-drivers-license.  In order to begin the process by obtaining a permit, an individual must first submit documentation showing he or she is medically qualified.  *See id.*  Therefore, allowing a new hire ninety days to pass a DOT medical examination would conflict with the requirement that he or she obtain a CDL within ninety days.  Had Weatherford intended to provide such a grace period, it would have explicitly included it in the job description, as it did for the requirement of obtaining a CDL.

disabled." Doc. #34 at 10. Cole does not contend that he was actually disabled or had a record

of a disability, and seeks partial summary judgment solely on a "regarded as" claim under the

ADA. *See id.* <u>An individual who is not disabled cannot seek the benefit of having his</u>

<u>qualification determined in light of an accommodation.</u> *Powers v. Tweco Prods.*, 206 F. Supp.

2d 1097, 1114 (D. Kan. 2002) ("[T]he court holds that plaintiff, who is admittedly not disabled,

is not entitled to any accommodation when determining whether she is 'qualified.'"). Thus, Cole

cannot establish the second prong of his prima facie case.

Moreover, Plaintiff's insertion of a failure to accommodate claim into the elements of his

prima facie case is a red herring and is not supported by law. *See* Doc. #34 at 12 ("Weatherford

had a duty to provide a reasonable accommodation to Mr. Cole by allowing him sufficient time

to obtain his cardiology and orthopedic records from his physicians in Grand Junction and

transmit them to Dr. Kalevik."). An employee is entitled to a reasonable accommodation only if

he was *actually disabled* under the ADA. "[N]o failure to accommodate claim can be made, as a

matter of law, for an individual who was 'regarded as' disabled, rather than who was actually

disabled." *Graham v. Three Vill. Cent. Sch. Dist.*, No. 11-CV-5182, 2013 U.S. Dist. LEXIS

143264, at *32 (E.D.N.Y. Sept. 30, 2013) ("regarded as" theory of disability is not actionable in

the context of a failure to accommodate claim); *Martinez v. Cole Sewell Corp.*, 233 F. Supp. 2d

1097, 1132 (N.D. Iowa 2002) (a plaintiff "cannot, as a matter of law, assert a failure-to-

accommodate claim based on a record of disability;" instead, a plaintiff can establish a failure-to-

accommodate claim only by showing an "actual disability").

Because Cole does not contend in his Motion and cannot establish that he was actually

disabled at the time of his termination, as a matter of law, Weatherford cannot be held liable for

failing to accommodate Cole under the ADA.  *See Graham*, 2013 U.S. Dist. LEXIS 143264, at

*32; *Cole Sewell Corp.*, 233 F. Supp. 2d at 1132; *see also Fontanilla v. City & County of San*

*Francisco*, 2001 U.S. Dist. LEXIS 6919, at *47 (N.D. Cal. Feb. 28, 2001) ("[S]uch a

requirement would treat non-disabled employees unequally: non-disabled employees who are

perceived as disabled would be entitled to reasonable accommodation, whereas non-disabled

employees whose employers are not under such a misperception would not be entitled such

accommodation.").

Thus, the Court should reject Cole's assertion that Weatherford had a legal duty to

provide him with an accommodation that may have allowed him to become qualified for the

Equipment Operator IV position prior to terminating his employment.  Because Plaintiff cannot

establish the second prong of his prima facie case or pursue a failure to accommodate claim, the

Court should deny Plaintiff's Motion.

### C.    Cole fails to establish Weatherford terminated his employment because of a "disability" under the ADA

To establish the third prong of his prima facie case, Cole must show that Weatherford

terminated him under circumstances that give rise to an inference that the termination was based

on his disability under the ADA.  *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.

1997).

Because Plaintiff cannot establish he had a disability under the ADA, as described above,

the third prong of his prima facie case necessarily fails.  Even if Plaintiff could demonstrate he

was "disabled" under the ADA, Plaintiff proffers insufficient evidence of animus to establish that

his termination was discriminatory as a matter of law.

Cole relies almost entirely upon Wynn-Grove's speculation and subjective beliefs about Brannon's knowledge and motivations to support his theory of discrimination.  *See Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.), *cert. denied*, 528 U.S. 933, 120 S. Ct. 334, 145 L. Ed. 2d 260 (1999) (conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence); *Nutting v. RAM Southwest, Inc.*, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000) (same).

Even if Brannon had stated to Wynn-Grove that Cole was too "high risk" or that his health history precluded him from employment as an Equipment Operator IV, such statements are insufficient to establish that Brannon perceived Cole as disabled or was motivated by discriminatory animus.  A fact-finder could easily conclude that any such statements by Brannon were nothing other than an acknowledgment that employing an individual to operate dangerous and expensive equipment who did not possess the necessary medical clearance and a valid CDL presented a financial risk, legal risk, and most importantly – a safety risk – to Weatherford and its employees and customers.

Weatherford terminated Cole because he failed to pass the DOT medical examination during orientation, and thus was not qualified for the Equipment Operator IV position at the time of his termination.  *See, e.g.*, Ex. J to Ex. #36 at 7:23-8:4; Ex. I to Doc. #36 at 3.  The fact that Cole did not pass the DOT medical examination due to historical, transitory, and minor medical conditions, which did not significantly limit him in any way, cannot in and of itself establish that the termination decision was discriminatory as a matter of law.

**II.     Conclusion**

For the reasons set forth above, Weatherford respectfully requests that the Court deny Plaintiff's Motion for Partial Summary Judgment in its entirety.  In addition, for the reasons set forth above and in Defendants' Motion for Summary Judgment [Doc. #36], Weatherford requests the Court enter judgment as a matter of law in its favor on Plaintiff's discrimination claim, and that it be awarded its costs, attorney fees, and such other and further relief as the Court deems appropriate.

DATED this 20th day of April, 2015.

Respectfully submitted,


*s/ Steven M. Gutierrez*
Steven M. Gutierrez
Sarah R. Wisor
HOLLAND & HART LLP
Post Office Box 8749
Denver, CO  80201-8749
Phone:  303-295-8531 (Gutierrez)
              303-295-8286 (Wisor)
Fax:  800-840-4986 (Gutierrez)
         303-713-6303 (Wisor)
SGutierrez@hollandhart.com
SRWisor@hollandhart.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2015, I have caused to be electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to the following:

Lynn D. Feiger
Alan S. Thompson
Justin M. Plaskov
Lohf Shaiman Jacobs Hyman & Feiger PC
950 S. Cherry St., Ste. 900
Denver, CO 80246
(303) 753-9000

Attorneys for Plaintiff James Cole

*s/ Sarah R. Wisor*

7703314_1