IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-01115-WJM-KMT

JAMES COLE, individual,

 Plaintiff,

v.

WEATHERFORD INTERNATIONAL, LLC, f/k/a WEATHERFORD INTERNATIONAL, INC., a Delaware corporation, and WEATHERFORD U.S., L.P., a Louisiana corporation,

 Defendants.

---

## REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

 Defendants submit this Reply in Support of Defendants' Motion for Summary Judgment [Doc. #36] and request the Court grant Defendants summary judgment for the reasons below.

## INTRODUCTION

 Plaintiff James Cole alleges that his former employer, Weatherford, discriminated against him under the Americans with Disabilities Act ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"). On March 20, 2015, Weatherford filed a Motion for Summary Judgment on the basis that no genuine issue of material fact exists and Weatherford is entitled to summary judgment as a matter of law. Doc. #36. Cole contemporaneously filed a Motion for Partial Summary Judgment. Doc. #34. In Cole's Motion, he sets forth a six page statement of Undisputed Facts, contends there exists no genuine issue of disputed fact, and requests that the Court grant summary judgment in his favor. *See id.* at 2-8. In Cole's Response to Defendants'

Motion for Summary Judgment [Doc. #46], Cole incorporates the *Undisputed* Facts section of his Motion for Partial Summary Judgment as Additional *Disputed* Facts he now contends necessitate the denial of Defendants' Motion. *Compare* Doc. #34 at 2-8 and Doc. #46 at 4-10. Cole does so despite substantial overlap between the parties' statements of fact and his admission of many of those facts in his Response, in an attempt to create the illusion of a material fact issue through sheer volume of purportedly disputed allegations. When Cole's statements of fact are untangled from his speculation, conclusory allegations and legal conclusions, it is apparent that no material fact issue exists and Plaintiff's ADA claim may be disposed of as a matter of law.

Cole's Response also obscures the legal issues to be decided by conflating multiple theories of disability discrimination. *See* Doc. #46. Cole alleges he was unlawfully terminated by Weatherford in violation of the ADA because he (1) had an actual disability, (2) had a "record of" a disability, or (3) was "regarded as" disabled by Weatherford.[1] *See id.* at 10-21. Cole also contends Weatherford failed to accommodate him in violation of the ADA, which he claims is an actionable theory regardless of whether or not he was actually disabled. *See id.* at 25-27.

For purposes of summary judgment, each of Cole's theories must be examined individually to determine whether Cole has stated a prima facie case of disability discrimination. When they are, it is readily apparent that Cole cannot state a prima facie case under any theory and Weatherford is entitled to summary judgment.

---

[1] Cole pursued only a "regarded as" claim in his Motion for Partial Summary Judgment, and did not contend he was actually disabled or had a record of a disability. *See* Doc. #34 at 9-11.

## REPLY CONCERNING UNDISPUTED FACTS

2.      Admitted that Cole had back surgery.  Plaintiff's legal conclusion that "Weatherford regarded Mr. Cole as disabled" is not a statement of fact; however, to the extent it requires any response from Weatherford, it is denied.

13.     Admitted that Cole obtained a DOT Medical Examiner's Certificate from Chiropractor David Hansen certifying he met the qualifications for commercial driver fitness as of March 29, 2012, following his separation from employment with Weatherford.  *See* Ex. N to Doc. #46.

19.     Plaintiff's legal conclusion that Weatherford "denied Mr. Cole a reasonable accommodation" is not a statement of fact; however, to the extent it requires any response from Weatherford, it is denied.

23.     Admitted that Ex. O to Doc. #46 states that an Equipment Operator IV "[m]ust obtain CDL within 90 days of hire date."  *See* Doc. #46-2 at 3.  However, Plaintiff improperly denies Defendants' Statement of Material Fact ¶ 23 in its entirety.  *See* Doc. #46 at 3.  Plaintiff cites no evidence to contradict and does not dispute that the Equipment Operator IV position requires driving large pieces of equipment, such as chemical flatbeds, hydration units, stimulation and fracturing pumps, and blender units, on the highway to a job site.  *See* Ex. F to Doc. #36 at 4.  Plaintiff cites no evidence to contradict and does not dispute that an Equipment Operator IV must possess a commercial driver's license to perform these duties legally.  *See id.*

29.     Admitted that Ex. O to Doc. #46 states that an Equipment Operator IV "[m]ust obtain CDL within 90 days of hire date."  *See* Doc. #46-2 at 3.

33.     Plaintiff purports to deny Defendants' Statement of Material Fact ¶ 33 fn. 1 without any factual explanation of the reason for the denial, in violation of Section III(E)(5) of the Court's practice standards.  Plaintiff merely cites his allegations that he "had back surgery in 2011 to correct a bulged disk," he disclosed to his doctor that he had "back surgery," and additional allegations describing the timing of Weatherford's decision to terminate his employment.  *See* Doc. #46 at 3, 5-7.  The allegations cited by Plaintiff do not support the denial of Defendants' Statement of Material Fact ¶ 33 fn. 1, which states that "Cole does not contend his back condition is a disability.  Cole had surgery to fix a bulging disk and has no restrictions or limitations related to his back."  Doc. #36 at 6.  Plaintiff undisputedly testified that he has no limitations or restrictions related to his back, and he does not claim that his back or back surgery is a disability in this case.  *See* Ex. A to Doc. #36 at 132:9-24 ("Q. Does your back affect your ability to perform work today?  A.  No.  And has it since the six weeks passed?  A.  No.  Q.  So you haven't had an recurrence of the issues – A.  No . . . Q.  Now, do you claim that your back is a disability?  A.  No.").

36.     Plaintiff purports to deny Defendants' Statement of Material Fact ¶ 36 but, in doing so, misstates Defendants' Statement of Material Fact ¶ 36.  There is no dispute that Dr. Kalevik told Cole he would not be able to certify him *without first evaluating additional medical records pertaining to Cole's medical history and receiving a release from his cardiologist. See* Ex. A to Doc. #36 at 96:8-97:9; Ex. M to Doc. #46.

39.     There is no dispute that Ms. Wynn-Grove communicated to Terry Crabb that Cole did not pass his DOT physical and Dr. Kalevik did not issue Cole a DOT Medical Examiner's Certificate, i.e. that Cole had not been certified as meeting the standards articulated in 49 CFR §

391.41 (which is the determination made during the DOT physical and certified in the DOT

Medical Examiner's Certificate).  *See* Ex. H to Doc. #36 at 4:13-5:11, 6:21-25 (Terry Crabb

testified that he received a phone call from Wynn-Grove during which she stated "that the

gentleman had not passed his DOT physical during the orientation and that the doctor doing the

examination refused to give him a DOT card.").

40.     Plaintiff purports to deny Defendants' Statement of Material Fact ¶ 40 without

any factual explanation of the reason for the denial, in violation of Section III(E)(5) of the

Court's practice standards.  Plaintiff offers no evidence to dispute that Wynn-Grove

communicated to Mr. Crabb that Human Resources was recommending terminating Mr. Cole's

employment.  *See* Ex. H to Doc. #36 at 6:3-11 ("Ms. Wynn Grove called you during the

orientation?  A. Yes.  Q.  And she told you that they had decided to fire Jim Cole?  A.  They

didn't decide – she recommended that he be released due to the doctor.").

41.     Plaintiff purports to deny Defendants' Statement of Material Fact ¶ 41 without

any factual explanation of the reason for the denial, in violation of Section III(E)(5) of the

Court's practice standards.  Merely citing to Plaintiff's own allegations that Michelle Brannon

made the termination decision – which is undisputed – does not adequately support a denial that,

on March 8, 2012, Plaintiff Cole was informed that he would not be employed by Weatherford as

an Equipment Operator IV because he had not passed the DOT medical examination.

42.     Plaintiff purports to deny Defendants' Statement of Material Fact ¶ 42 without

any factual explanation of the reason for the denial, in violation of Section III(E)(5) of the

Court's practice standards.  Furthermore, the allegation Plaintiff cites contending he was offered

a warehouse position *after* his termination from employment with Weatherford is contradicted by

undisputed evidence, and his accusation that Defendants are attempting to "skew the record" is baseless.  Doc. #46 at 4, 8.  It is undisputed that *Plaintiff was still employed by Weatherford* at the time he was offered the warehouse position.  *See* Ex. A to Doc. #36 at 109:8-17; Ex. J to Doc. #36 at 15:10-11; Ex. 16 to Doc. #47.  Therefore, his contention that he was offered the position after his termination – which was effective March 11, 2012 – is insufficient to create a fact dispute with respect to Defendants' Statement of Material Fact ¶ 42.  *See id.*

45.     Plaintiff purports to deny Defendants' Statement of Material Fact ¶ 45 without any factual explanation of the reason for the denial, in violation of Section III(E)(5) of the Court's practice standards.  Merely pointing generally to twenty-six of his own factual allegations, many of which are undisputed by Weatherford and none of which reflects the date Plaintiff was terminated, is insufficient to create a fact dispute with respect to Defendants' Statement of Material Fact ¶ 42.  *See* Doc. #46 at 4-8.

46.     Plaintiff purports to deny Defendants' Statement of Material Fact ¶ 46 without any factual explanation of the reason for the denial, in violation of Section III(E)(5) of the Court's practice standards.  Moreover, the allegations cited by Plaintiff do not refute the record evidence that Weatherford was in need of experienced equipment operators at its Williston operations.  *See* Ex. J to Doc. #36 at 34:17-21; Ex. A to Doc. #36 at 36:15-37:1.

47.     Plaintiff purports to deny Defendants' Statement of Material Fact ¶ 47 without any factual explanation of the reason for the denial, in violation of Section III(E)(5) of the Court's practice standards.  Moreover, the allegations cited by Plaintiff do not refute the record evidence that Plaintiff never submitted an updated Medical Examiner's Certificate *to Weatherford* or *informed Weatherford* he obtained an updated Medical Examiner's Certificate.

*See* Doc. #36 at 8.  Plaintiff's provision of this documentation *to the EEOC* (without any evidence it was shared with Weatherford prior to a FOIA request in this litigation) and in response to discovery requests in this litigation cannot reasonably be contended to create a fact issue with respect to Defendants' Statement of Material Fact ¶ 47.  Plaintiff presents no evidence supporting that Weatherford learned about Plaintiff's updated DOT Medical Examiner's Certificate prior to April 18, 2014 – around the same time Weatherford's Williston fracking operations were closing in their entirety.  *See* Doc. #46 at 9; Ex. A to Doc. #36 at 97:1-98:1, 139:5-22; Ex. I to Doc. #36 at 3; Ex. GG at 71:1-8 (Williston fracking operations were shut down in March-April 2014).

## RESPONSE CONCERNING ADDITIONAL DISPUTED FACTS

48.     Admitted.

49.     Denied.  Plaintiff's conclusory allegations that he was "severely restricted" contained in an affidavit prepared to defeat summary judgment cannot properly be asserted as "disputed facts" and are contradicted by prior sworn testimony by Plaintiff.  *See* Ex. A to Doc. #36 at 57:14-58:2, 133:4-16, 141:5-15, 142:8-11; Ex. C to Doc. #36; Ex. G to Doc. #36.

50.     Denied.  Plaintiff's conclusory allegations that an unspecified heart condition "substantially limited multiple life activities," contained in an affidavit prepared to defeat summary judgment cannot properly be asserted as "disputed facts" and are unsupported by any actual *facts* other than that Plaintiff takes vitamins.  Weatherford does not dispute that Plaintiff took fish oil and niacin (Vitamin B) at the time of his termination.

51.     Admitted.

52.     Admitted.

53.     Admitted.

54.     Admitted.

55.     Admitted.

56.     Admitted that Cole testified that Dr. Kalevik told him to contact his cardiologist and request that the cardiologist send Cole's medical records to Dr. Kalevik.  *See* Ex. Q to Doc. #46 at 97:1-9.  Denied that the cited testimony supports that Dr. Kalevik said he needed these records to "complete" the physical, or that the physical was incomplete.  *See id.*

57.     Admitted that Dr. Kalevik wrote on Cole's Medical Examination Report that Cole needed a "release cardio/ortho."

58.     Admitted that Dr. Kalevik's office called Weatherford and spoke with Phyllis Wynn-Grove, a former Weatherford Human Resources representative.  *See* Ex. H to Doc. #36 at 4:15-6:25; Ex. J to Doc. #36 at 7:23-8:10, 10:21-11:1, 12:11-22.  Denied that Plaintiff accurately paraphrases or quotes Wynn-Grove's deposition testimony with respect to the remaining statements contained in Plaintiff's Additional Disputed Facts ¶ 58.  *See* Ex. V to Doc. #46 at 11:8-13:17.

59.     Admitted that, to the best of Weatherford's knowledge, no representative from Dr. Kalevik's office told any employee of Weatherford that Cole "could not pass a DOT physical." *See* Ex. W to Doc. #46.

60.     Admitted that no DOT medical examiner stated or reported to Weatherford either that Cole met the physical qualification standards in 49 CFR § 391.41 for commercial drivers or that Cole did not meet those standards.  *See* Ex. W to Doc. #46.

61.     Denied that Plaintiff accurately paraphrases Mora's deposition testimony in Plaintiff's Additional Disputed Facts ¶ 61.  *See* Ex. X to Doc. #46 at 14:16-19.

62.     Denied that Plaintiff accurately paraphrases Wynn-Grove's deposition testimony in Plaintiff's Additional Disputed Facts ¶ 62.  *See* Ex. V to Doc. #34 at 41:21-42:2, 87:19-25.

63.     Denied.  Weatherford terminated Cole's employment effective March 11, 2012. *See* Ex. 16 to Doc. #47.

64.     Denied.  *See* Ex. 11 to Doc. #34 at 58:5-15; *id.* at 57:17-23 ("My question is: Weatherford knew that Dr. Kalevik did not finish the DOT physical for Jim Cole, didn't they? . . . A. I can't speak for Dr. Kalevik or the HR representatives who were there at the time."); Ex. 17 at 90:2-8 ("Q. . . It was your understanding, though, that Mr. Cole's physical wasn't complete . . . isn't that correct? . . . A. Not that his physical wasn't complete . . .").

65.     The statement contained in Plaintiff's Additional Disputed Facts ¶ 65 is not a statement of fact but a legal conclusion; however, to the extent it requires any response from Weatherford, it is denied.  Wynn-Grove admittedly did not participate in making the termination decision and her generalized statements about individuals with "back trouble" do not support the legal conclusion contained in Plaintiff's Additional Disputed Facts ¶ 65.  *See* Ex. V to Doc. #46 at 81:5-82:4; Ex. 17 to Doc. #47 at 19:22-20:15.

66.     Denied that Plaintiff accurately paraphrases Wynn-Grove's deposition testimony in Plaintiff's Additional Disputed Facts ¶ 66.  *See* Ex. V to Doc. #34 at 13:25-14:13 (containing no mention of any "financial threat" to the company).

68.     Admitted that Brannon participated in making the decision to terminate Cole's employment.  *See* Ex. 16 to Doc. #47 (termination approved by Brannon and Crabb); Ex. I to

Doc. #36 at 3.  Denied that Brannon informed Cole of the termination decision.  *See* Ex. A to

Doc. #36 at 100:6-14, 103:11-16.

69.     Admitted that, on March 8, 2012, Cole was informed that he would not be

employed by Weatherford as an Equipment Operator IV.  Ex. I to Doc. #36 at 3; Ex. A to Doc.

#36 at 100:6-14, 103:1-16.  Denied that the deposition testimony cited by Plaintiff states that

Cole did not have an opportunity to have his physicians transmit any information to Weatherford

and, therefore, Weatherford denies those allegations. *See* Ex. Q to Doc. #46 at 100:15-20.

Denied that Wynn-Grove told Cole he could not work for Weatherford "because of his health

history."  *See* Ex. 17 to Doc. #47 at 23:21:24-1 ("I had to tell him, Mr. Cole, based on the

information we've received, we don't think this is a good fit for Weatherford. And that's when

he said to me, Well, why is that? He wanted to know why that was. And I said, Basically, just

looking over everything, we just don't feel this is a good fit . . .").

70.     Denied.  The testimony cited does not support that Cole "said [to Wynn-Grove]

he could submit his medical records from his physicians, which would clear him to obtain his

CDL, and thereby pass his physical exam."  Plaintiff's Additional Disputed Facts ¶ 70; *see* Ex. Q

to Doc. #46 at 100:6-24 ("I stood there and stared at her for a second, and I'm like, well I'm still

waiting for medical records.  And she goes, it doesn't matter, you can't work for Weatherford.").

71.     Admitted that Wynn-Grove testified that Cole asked if his doctor could submit

"information" about his heart.  *See* Ex. V to Doc. #46 at 23:12-24:17.  Denied that Wynn-Grove

testified that Plaintiff "begged" or "pleaded."  *See id.*

72.     Denied that the cited deposition testimony or document support the allegations in

Plaintiff's Additional Disputed Facts ¶ 72.  *See* Ex. Q to Doc. #46 at 110:20-111:4; Ex. AA to

Doc. #46. Cole did not testify that he "begged" or "pleaded," or that he asked to obtain a "DOT card" from his own doctor. *See id.*

73. Admitted.

74. Admitted that Cole's personal physicians never submitted any medical documentation concerning Cole's health conditions or his physical qualifications to Dr. Kalevik or Weatherford. Denied that Weatherford did not "allow" Cole or his physicians to submit such documentation. *See* Ex. 18 to Doc. #47 at 34:18-21 ("If Mr. Cole would have provided additional documentation, even after the fact, there's no doubt he would have been rehired, so to speak, and placed in that equipment operator role."). Denied that the cited evidence supports that Cole requested to take a DOT physical with another doctor, or that Weatherford denied any such request. *See* Response to Plaintiff's Additional Disputed Facts ¶ 72.

75. Denied that Ex. Y to Doc. #46 constitutes a "written complaint of disability discrimination," or that Plaintiff sent the email reflected in Ex. Y after he was terminated by Weatherford. *See id.* It is undisputed that Plaintiff was a current employee of Weatherford at the time he sent the email contained in Ex. Y, and he was not separated from employment until March 11, 2012. *See* Ex. 16 to Doc. #47.

76. Admitted Weatherford offered Cole a warehouse position. Denied that Cole's employment was terminated at the time he was offered a warehouse position. Ex. 16 to Doc. #47; Ex. A to Doc. #36 at 109:8-17; Ex. J to Doc. #36 at 15:10-11.

77. Admitted that the Warehouse Attendant positions in Williston paid between $13.99 and $20.29 per hour. Denied that Cole's statement adequately supports his allegation that

the warehouse positions paid $6.90 per hour less than Weatherford's Equipment Operator IV positions.  *See* Ex. P to Doc. #46 ¶ 4.

78.     Denied.  The Warehouse Attendant position was a rotational position that did not require permanent relocation to Williston. *See* Ex. GG; Ex. JJ.

79.     Admitted that Cole rejected the offer of working as a Warehouse Attendant in Williston.  Denied that the warehouse position required permanent relocation.  *See* Ex GG; Ex. JJ.  Weatherford is without sufficient information to form a belief as to the truth of the statements regarding Plaintiff's reasons for rejecting the offer and therefore denies the remaining allegations in Plaintiff's Additional Disputed Facts ¶ 79.

80.     Denied.  *See* Ex. G to Doc. #36 (reflecting Cole's Medical Examination Report For Commercial Driver Fitness Determination was faxed by Dr. Kalevik's office to Weatherford on March 8, 2012).

81.     Admitted that Cole obtained a DOT Medical Examiner's Certificate from Chiropractor David Hansen certifying he met the qualifications for commercial driver fitness as of March 29, 2012.  *See* Ex. N to Doc. #46.

82.     Admitted that Exhibit AA to Doc. #46, received by the EEOC in May 2012, contained an allegation that Plaintiff passed a DOT medical examination following his termination from employment with Weatherford.  *See id.*  Admitted that Plaintiff's Complaint, filed on or around April 18, 2014, contained an allegation that Plaintiff passed a DOT medical examination following his termination from employment with Weatherford.  *See* Doc. #1 at 5.

83.     Weatherford admits that, after it learned during this litigation, which was instituted in April 2014, that Cole had passed a DOT medical examination, it never offered to

rehire Plaintiff.  Weatherford denies that it could have "reinstated" Cole to an Equipment

Operator IV position in Williston, as those fracking operations were closed down between March

and April 2014.  *See* Ex. GG at 71:1-8 (Williston fracking operations were shut down in March-

April 2014); *see also* Ex. JJ.

84.     Denied.  Plaintiff's conclusory allegation that Weatherford discriminated against

other employees contained in an affidavit prepared to defeat summary judgment cannot properly

be asserted as a "disputed fact."

85.     Plaintiff's allegations concerning the employee in Plaintiff's Additional Disputed

Facts ¶ 85 are immaterial and inadmissible in this lawsuit.  *See Semsroth v. City of Wichita*, 304

F. App'x 707, 717 (10th Cir. 2008) ("[I]ndividual plaintiffs may not utilize the pattern or practice

method of proof in [discrimination] suits."); *see also Argo v. Blue Cross and Blue Shield of

Kansas, Inc.,* 452 F.3d 1193, 1199 (10th Cir. 2006) ("[A]t summary judgment courts should

disregard inadmissible hearsay statements contained in affidavits, as those statements could not

be presented at trial in any form.").  To the extent Plaintiff's allegations require a response,

Weatherford denies terminating the employee "immediately" after learning about his alleged

heart attack.  The employee was terminated in a reduction-in-force in November 2012 and there

is no connection between his alleged heart attack in September 2012 and his termination in the

reduction-in-force.  *See* Ex. HH at 2.

86.     Plaintiff's allegations concerning the employee in Plaintiff's Additional Disputed

Facts ¶ 86 are immaterial and inadmissible in this lawsuit.  *See Semsroth v. City of Wichita*, 304

F. App'x 707, 717 (10th Cir. 2008) ("[I]ndividual plaintiffs may not utilize the pattern or practice

method of proof in [discrimination] suits.").  To the extent Plaintiff's allegations require a

response, Weatherford admits that the former employee suffered a heart attack prior to his employment by Weatherford.  Weatherford admits it learned about the employee's heart attack during the new hire orientation attended by Cole in March 2012.  Weatherford admits that it terminated the employee's employment on November 15, 2012, in connection with a reduction-in-force, after employing him in an equipment operator position for more than eight months.  *See* Ex. II at 2.

87.     Denied.  The documents cited by Plaintiff are emails sent by an administrative assistant that are not official company documents, rather informal spreadsheets the assistant was using to compile notes about new hires during the orientation.  Such emails did not have any effect on the former employee's  "job status," and the former employee was not terminated by Weatherford until November 2012.  *See* Ex. II at 2.

88.     Admitted that the referenced employee was paid as an Equipment Operator. Weatherford is without sufficient information to form a belief as to whether the former employee obtained a CDL, and therefore denies the allegation in Plaintiff's Additional Disputed Fact ¶ 88 that he "never" obtained a CDL.

89.     Admitted that Mora did not have knowledge as to why a former Weatherford administrative assistant listed the employee in a chart titled "terminations," when his employment was not terminated by Weatherford at that time.  Ex. X to Doc. #46 at 21:6-23:23.

## **LEGAL ARGUMENT**

## **I.  Cole failed to establish he was unlawfully terminated based on an "actual" disability**

Cole has failed to state a prima case facie of disability discrimination based upon an "actual" disability because he cannot demonstrate he was substantially limited in any major life

activity at the time of his termination.  In an effort to revive an ADA claim based upon an "actual" disability,[2] Cole submits an affidavit containing conclusory allegations that he was "severely restricted" and "substantially limited" following his heart surgery in April 2012.  *See* Ex. P to Doc. #46.  Cole claims he was unable to perform "strenuous work" and was restricted in his ability to perform "chores/duties around" the house for an unspecified period of time.  *Id.*

These allegations are insufficient to create a material fact issue as to whether Cole was disabled at the time of his termination.  Cole cites no medical evidence in support of his allegations, and his lay testimony is not admissible to show "how [his] condition causes limitations on major life activities."  *Felkins v. City of Lakewood*, 774 F.3d 647, 652 (10th Cir. 2014).  Additionally, the affidavit lacks details concerning any activity, chore, or type of work Cole allegedly was unable to perform following his surgery and concedes such limitations ceased within six to eight weeks, when he returned to his physically-demanding job.  *See* Ex. P to Doc. #46; Ex. A to Doc. #36 at 92:8-93:3 (Cole was "off of work for about six weeks" and then returned to work for Crown Supply Company).  Cole also fails to explain how any difficulties he may have had compare to those of the average population, which is required to demonstrate a substantial limitation.  *See Johnson v. Weld Cnty.*, 594 F.3d 1202, 1218 n.10 (10th Cir. 2010) (plaintiff must show how difficulties compare to those of the average person).

Moreover, the relevant inquiry is whether Cole was substantially limited *at the time of his termination*, not shortly after his surgery, a year prior.  *See Lee v. Spectranetics Corp.*, No. 12-cv-00633-WYD-MEH, 2013 U.S. Dist. LEXIS 139232, at *7 (D. Colo. Sept. 27, 2013) ("The relevant determination is whether [the plaintiff] had a disability at the time of the adverse

---

[2] In his Motion for Partial Summary Judgment, Cole does not contend he was actually disabled.

employment decision.").  Cole admittedly continued working for Crown from June 2011 to March 2012, without restrictions, until he resigned from his position to accept employment with Weatherford.  *See* Ex. A to Doc. #36 at 35:4-8, 92:24-93:3.  At the time Weatherford terminated Cole, he had no work restrictions and his former health conditions involving his heart and back did not substantially limit him in any way.  *See* Ex. A to Doc. #36 at 130:19-25.

Cole has failed to create a fact issue as to whether he was actually disabled at the time of his termination, and cannot defeat summary judgment with a conclusory affidavit that asserts an unspecified heart condition "severely restricted" his major life activities a year prior.  *Cf. Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) (court may disregard affidavit that "constitutes an attempt to create a sham fact issue"); *Denetclaw v. Thoutt Bros. Concrete Contrs.*, 287 F. App'x 17, 23 (10th Cir. 2008) (affidavit, which contradicts deposition testimony, cannot be used to create a genuine issue of fact).

In addition, Cole cannot establish that he was a "qualified" individual with a disability at the time of his termination.  Cole implies he was "qualified" because he should have been allowed 90 days to pass his DOT medical examination because Equipment Operator IVs were allowed 90 days to obtain a valid CDL.  Cole's assertion is not supported by the evidence or logic.  Passing a DOT medical examination is the first of several prerequisites to obtaining a CDL, including securing a Commercial Learners Permit, passing a driving record check, practicing operating a commercial motor vehicle under supervision, and passing a Skills test.  *See* http://www.fmcsa.dot.gov/ registration/commercial-drivers-license/how-do-i-get-commercial-drivers-license.  To begin the process, an individual must first submit documentation showing he is medically qualified.  *See id.*  Therefore, allowing a new hire 90 days to pass a

medical examination would conflict with the requirement that he obtain a CDL within 90 days. Had Weatherford intended to provide such a grace period for the medical exam, it would have explicitly included it in the job description.

Cole does not dispute that passing the medical examination and obtaining a CDL are essential functions of the Equipment Operator IV position, nor does he dispute that he did not pass the examination prior to his termination.  Thus, it is undisputed that Cole was unable to perform the essential functions of the job, without accommodation, at the time of his termination.

To show that he could perform the essential functions of his job *with* an accommodation (such as additional time to obtain an updated Medical Examiner's Certificate), Cole must first show that, "as a precondition to suit," he actually requested accommodation, unless the employer foreclosed the interactive process through its policies or explicit actions.  *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 744-45 (10th Cir. 2013).  Cole cannot make this showing because he did not request any accommodation until after the termination decision was made. *See, e.g.*, *Malipurathu v. Jones*, 2013 WL 3821009, at *13 (W.D. Okla. July 23, 2013) (letter "cannot be construed as a request for accommodation" where it was not received until after plaintiff's discharge) *aff'd,* 563 F. App'x 646 (10th Cir. 2014); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 929 n.3 (7th Cir. 2001) (plaintiff cannot wait until after dismissal to request an accommodation for the first time).

Cole also cannot show that Weatherford terminated him "because of" an actual disability.  *See Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 912 n.4 (10th Cir. 2004).  An employer cannot fire an individual "because of" of his actual disability unless the employer is aware that he is actually disabled.  *See, e.g.*, *Nilles v. Givaudan Flavors Corp.*, 521 F. App'x

364, 368 (6th Cir. 2013) ("[E]xisting case law makes clear that an employee cannot be

considered to have been fired on the basis of disability unless the decision-maker who fired the

individual had knowledge of that disability"); *Simmons v. Potter*, No. 08-cv-02593-WYD-KLM,

2010 WL 3002038, at *11 (D. Colo. July 29, 2010) ("An employer cannot discriminate against

an employee on their disability if they did not even know of the disability").  Cole presents no

evidence that Weatherford was aware of an actual disability that substantially limited him in any

major life activity.  The evidence proffered by Cole, at most, supports that a Weatherford Human

Resources representative had non-specific concerns regarding Cole's "health history," which is

not tantamount to having knowledge that Cole was limited in any major life activity at the time

of his termination.  Thus, Weatherford is entitled to summary judgment on Cole's claim of

discriminatory discharge based upon an actual disability.

**II**.  **Cole failed to establish he was unlawfully terminated based on a "record of" a disability**

With respect to a discriminatory discharge claim based upon a "record of" disability,

Cole fails to identify any specific impairment he allegedly suffered from, nor does he cite any

medical evidence – as opposed to his own lay testimony – suggesting that this impairment

substantially limited any major life activity.  Even if, as Cole now contends in his affidavit, he

experienced limitations on his activities for up to eight weeks in 2011, Cole still falls short of

factually supporting that any such limitations rose to the level of *substantial* limitations.

In addition, Cole presents no evidence that Weatherford was aware at the time of his

termination of any historical substantial limitations he had on a major life activity.  Even

accepting as true Cole's allegation that Dr. Kalevik's office communicated to Weatherford that

Cole had heart and back surgery, there is no evidence that Dr. Kalevik's office or Weatherford

were aware Cole had experienced any substantial limitation in connection with those surgeries. Cole explicitly denied to Dr. Kalevik that he had limitations or restrictions associated with his prior surgeries.

Cole also cannot show that he was a "qualified" individual with a disability for the reasons discussed above, nor can he show that Weatherford terminated him "because of" a "record of" an actual disability. Weatherford could not have terminated Cole "because of" his record of a disability unless Weatherford knew that Cole had an actual disability in the past. Because Cole points to no evidence that Weatherford was aware of any historical disability, he cannot establish Weatherford took adverse action against him because of a record of a disability.

## III. Cole failed to establish Weatherford unlawfully terminated him because it regarded him as disabled

A person satisfies the requirement of being "regarded as" disabled if he establishes that he "has been subject to an action prohibited [under the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). However, "the mere fact of awareness" of an impairment or a limitation is insufficient to demonstrate that a defendant regarded a plaintiff as disabled for purposes of summary judgment. *Thalos v. Dillon Cos.*, 86 F. Supp. 2d 1079, 1085 (D. Colo. 2000); *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1219 (10th Cir. 2007) ("An employer's knowledge of an impairment alone is insufficient to establish the employer regarded the employee as disabled."). Instead, Cole must establish that the decision-maker mistakenly believed that he had a physical impairment *that substantially limits one or more major life activities*, or mistakenly believed that an actual, nonlimiting impairment *substantially limits one or more major life activities*. *See Thalos*, 86 F. Supp. 2d at 1085-86.

19

Here, there is no evidence that the decision-maker with respect to Cole's termination – Michelle Brannon – mistakenly believed that he was substantially limited in any major life activity.  In support of his claim that Weatherford regarded him as disabled, Cole contends (1) Weatherford had knowledge of his "self-reported cardiac and back history" from Dr. Kalevik's office, (2) Brannon made comments to Wynn-Grove about Cole's "health history" and that he was "too high of a risk for Weatherford," and (3) Wynn-Grove testified that "[m]ost people that have had back surgery or have back trouble, they have some type of limitation on what they can lift  and what they cannot lift."  Doc. #46 at 16.  Each of these contentions individually, and considered in sum, is insufficient to establish Weatherford regarded Cole as substantially limited.

Cole cites only one ambiguous snippet of deposition testimony by Wynn-Grove suggesting Brannon had knowledge of Cole's medical conditions from a call with Dr. Kalevik's office.  *See* Ex. 4 to Doc. #34 at 11:8-13:17 ("Q. And did you receive that call about Mr. Cole? A. Yes.  Q. Were you the one who answered that call?  A. I answered it.  And then Michelle Brannon just wanted to make sure, so we both spoke with the – the clinic called and asked for me.").  Cole has failed to establish Dr. Kalevik's office even notified Weatherford of Cole's heart and back surgeries over the phone.  When asked about her conversation with Dr. Kalevik's office, Wynn-Grove recalled generally, "I think he [Cole] had had some previous heart trouble . . . I believe there was something a little bit with his blood pressure, but it wasn't out of control." Ex. 4 to Doc. #34 at 13:2-7.[3]  However, with respect to what information was provided by Dr. Kalevik's office, Wynn-Grove testified that she was told to look at Cole's health history, but did

---

[3] Wynn-Grove may have learned about these medical conditions from the DOT Medical Examiner's Report, from Cole after he had been notified of his termination, in conjunction with Cole's EEOC charge, or any number of other ways following Cole's termination.

not testify to receiving any details about his heart or back condition.  *See* Ex. 4 to Doc. #34 at

13:8-11 ("The medical company just said, We just think it's important that you see the history

that he has.  That was basically it."); Ex. 17 at 16:18-17:1 ("Q. So let's back up.  Help me

understand the chain of events.  You get a call from the clinic and somebody on the phone says

what?  A.  The person on the phone said, I have the following three people's physicals; two of

them were – you need to kind of just look at their history.  They said, 'We're not saying don't

hire, that's totally up to you, but make sure you look at their history with their health . . .'").

The testimony cited by Cole falls short of establishing Brannon had knowledge of or

regarded Cole as having any substantial limitation on a major life activity.  Even if Cole could

establish Brannon was aware of his heart or back surgery, Cole cannot establish that Brannon

was aware of any impairment that was not "transitory" and "minor."  *See* 42 U.S.C. §

12102(3)(B).  A plaintiff does not satisfy the requirement of being "regarded as" where the

employer is only aware of impairments that are "transitory" and "minor."  *Id.*   An impairment is

"transitory" if it has an actual or expected duration of less than six months.  *Id.*

Here, even if Brannon was aware of Cole's surgeries, his associated conditions were

objectively "transitory" and "minor."  Cole admitted his back injury is not a disability and that he

had no restrictions or limitations associated with his injury or prior surgery.  *See* Ex. 19 to Doc.

#47 at 57:14-58:2; Ex. G to Doc. #36.  Cole admitted he was unaware of his heart attack at the

time it occurred; admitted that he fully recovered in six to eight weeks; admitted that he had no

restrictions following his heart attack; and explicitly denied having any limitations or restrictions

associated with his medical condition or surgery.  *See* Ex. A to Doc. #36 at 91:1-92:12, 142:8-11;

Ex. G to Doc. #36; Ex. 19 to Doc. #47 at 57:14-58:2.

The comments allegedly made by Brannon to Wynn-Grove about Cole's "health history" and that he was "too high of a risk for Weatherford" are insufficient to establish Brannon regarded Cole as disabled.  Assuming this testimony is admissible, it fails to identify any major life activity, any substantial limitation, or otherwise demonstrate Brannon perceived Cole as having a substantial limitation on any major life activity.

Furthermore, Wynn-Grove's alleged perceptions about "most people that have had back surgery or have back trouble" are insufficient to establish Weatherford regarded Cole as disabled for purposes of his termination.  Ex. 4 to Doc. #34 at 81:5-82:4; *see* Ex. 17 to Doc. #47 at 19:22-20:15.  It is undisputed that Wynn-Grove did not participate in making the termination decision; thus, her perceptions or opinions about "most people that have had back surgery or have back trouble" are immaterial and inapposite with respect to whether any *decision-maker* regarded *Cole* as limited or disabled.  *Id.*  Wynn-Grove was a non-management employee with no authority to make termination decisions and there is no evidence she influenced the termination decision. *See* Ex. 17 to Doc. #47 at 19:22-20:1.

Even if Weatherford perceived Cole as unable to obtain a DOT Medical Examiner's Certificate at the time of his termination, obtaining one is not a major life activity.  A person may fail to obtain a certificate for any number of reasons, such as illegal drug use, uncorrected visual acuity of less than 20/40, or the inability to recognize certain colors, which do not themselves constitute disabilities.  *See* 29 C.F.R. § 1630.2(j)(vi); 42 U.S.C. § 12114; 29 C.F.R. § 391.41(b)(10) & (12).  Thus, even if Weatherford believed Cole was unable to pass a DOT medical examination at the time of his termination, it cannot be equated to regarding him as substantially limited in any major life activity under the ADA.

22

Cole cannot satisfy the remaining prongs of a prima facie case because he cannot show he was a "qualified" individual with a disability for the reasons described above, nor can he show that he was discharged because Weatherford regarded him as disabled. The "because of" prong of a "regarded as" claim is redundant of the "regarded as" prong. To establish the "regarded as" prong, Cole must prove that he was terminated "*because of* an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A) (emphasis added); *Banaszak v. Ten Sixteen Recovery Network*, No. 12-12433, 2013 WL 2623882, at *4 n.4 (E.D. Mich. June 11, 2013). For the reasons set forth above, including the absence of any evidence that the decision-maker was aware of any impairment that substantially limited Cole in any major life activity, Cole cannot prove the third element of a prima facie case of "regarded as" disability discrimination.

Therefore, Weatherford is entitled to summary judgment on Cole's claim that he was unlawfully discharged because Weatherford "regarded" him as disabled.

## IV.   Cole failed to establish an actionable failure to accommodate claim under the ADA

In his Response, Cole argues only that Weatherford was required to provide him with a reasonable accommodation if it regarded him as disabled; not that Weatherford failed to accommodate his actual disability. *See* Doc. #46 at 25-27. Plaintiff apparently concedes he does not have a failure to accommodate claim based upon an actual disability. *Cf. Hinsdale v. City of Liberal*, 19 F. App'x 749, 769 (10th Cir. 2001) (failure to respond to argument as to why summary judgment is appropriate as to a particular claim is "fatal" to the claim).

In support of his claim, Cole cites outdated case law and erroneously argues that the question of whether an employer is required to accommodate an employee who satisfies only the

"regarded as" definition is unsettled under the case law (and has been decided in the affirmative in the Tenth Circuit).  *See* Doc. #36 at 19-20.  This question was conclusively resolved when the ADAAA regulations were implemented in 2008.  Under the ADAAA, employers unambiguously are <u>not</u> required to accommodate employees who satisfy only the "regarded as" definition of disability.  *See* 29 C.F.R. § 1630.2(o)(4); Section 1630.2(o): Reasonable Accommodation, 76 Fed. Reg. 16,986 (March 25, 2011) ("The Commission has added a new provision (o)(4) in § 1630.2(o) of the final regulations, providing that a covered entity is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the "regarded as" prong (§ 1630.2(g)(1)(iii))").[4]  Thus, Cole's failure to accommodate claim based on the fact that Weatherford allegedly "regarded" him as disabled fails.  Cole's claim would separately fail because he cannot satisfy the "regarded as" or "qualified individual" elements of a failure to accommodate claim for the reasons described above.  Thus, Weatherford is entitled to summary judgment on Cole's failure to accommodate claim.

## CONCLUSION

For the reasons set forth in Defendants' Motion for Summary Judgment and herein, Weatherford respectfully requests that the Court enter summary judgment in its favor on all of Plaintiff's claims, and award it costs, attorney fees, and such further relief as it deems proper.

---

[4] *See also Censke v. Cnty. of Marquette*, No. 2:11-CV-119, 2013 WL 4499265, at *1 (W.D. Mich. Aug. 20, 2013); *Lewis v. Florida Default Law Grp., P.L.*, No. 8:10-CV-1182-T-27EAJ, 2011 WL 4527456, at *7 n.29 (M.D. Fla. Sept. 16, 2011); *Dahlman v. Tenenbaum*, No. CIV.A. DKC 10-2993, 2011 WL 3511062, at *7 n.3 (D. Md. Aug. 9, 2011); *Beair v. Summit Polymers*, No. CIV.A. 5:11-420-KKC, 2013 WL 4099196, at *1 (E.D. Ky. Aug. 13, 2013).

DATED this 7th day of May, 2015.

Respectfully submitted,

*s/ Steven M. Gutierrez*

Steven M. Gutierrez
Sarah R. Wisor
HOLLAND & HART LLP
Post Office Box 8749
Denver, CO  80201-8749
Phone:  303-295-8531 (Gutierrez)
           303-295-8286 (Wisor)
Fax:  800-840-4986 (Gutierrez)
       303-713-6303 (Wisor)
SGutierrez@hollandhart.com
SRWisor@hollandhart.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2015, I have caused to be electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to the following:

> Lynn D. Feiger
> Alan S. Thompson
> Justin M. Plaskov
> Lohf Shaiman Jacobs Hyman & Feiger PC
> 950 S. Cherry St., Ste. 900
> Denver, CO 80246
> (303) 753-9000
>
> Attorneys for Plaintiff James Cole

*s/ Sarah R. Wisor*