**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 14-cv-1115-WJM-KMT

JAMES COLE,

     Plaintiff,

v.

WEATHERFORD INTERNATIONAL, LLC, a Delaware corporation f/k/a
WEATHERFORD INTERNATIONAL, INC., and
WEATHERFORD, U.S., L.P., a Louisiana corporation,

     Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT, AND DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**

---

     Plaintiff James Cole ("Cole") sues Defendants Weatherford International, LLC,

and Weatherford U.S., L.P. (collectively, "Weatherford"), alleging violations of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*.  Before the Court

are the parties' competing motions for summary judgment (ECF Nos. 34 (Cole) & 38

(Weatherford)).  For the reasons explained below, the Court holds as a matter of law

that Cole was "qualified" for the position at issue here, and therefore grants Cole's

motion to that extent.  Both motions are otherwise denied.

## I.  LEGAL STANDARD

     Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the

movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  FACTS

The following facts are undisputed unless otherwise noted.  Some of these facts derive from materials filed under Restricted Access.  (*See, e.g.*, ECF No. 46 through 46-19.)  To the extent those materials are quoted or summarized below, the Court has concluded that the portions quoted or summarized do not meet the requirements for Restricted Access.  *See* D.C.COLO.LCivR 7.2(c)(2)–(4).

### A.    Cole's Heart Attack and Back Surgery

In April 2011, Cole was performing heavy oilfield labor in Texas for a company named Crown Supply Company (not a party here).  (ECF No. 36 at 2, ¶¶ 3, 7.)  Around that time, Cole experienced some debilitating symptoms, was evaluated at a hospital,

and was told by the doctors there that he may have recently had a heart attack.  (*Id.* at 2–3, ¶¶ 7–10.)  Additional testing detected a coronary blockage and Cole underwent a stent placement procedure.  (*Id.* at 3, ¶ 11.)  He was off work for about six weeks, but then returned to Crown Supply and worked without restrictions.  (*Id.* ¶¶ 12, 14.)

In November 2011, Cole had back surgery to address a bulged disk.  (ECF No. 46 at 5, ¶ 51; ECF No. 46-4 at 5.)  For the next six weeks, Cole was subject to certain restrictions with respect to lifting and bending.  (ECF No. 46-4 at 5.)  Following that six weeks, Cole returned to "life as normal."  (*Id.*)

## B.   Cole Joins Weatherford

Cole continued at Crown Supply until March 2012, when he accepted a position with Weatherford, which is also in the oilfield business.  (ECF No. 36 at 3, ¶ 14.)  Weatherford hired Cole to be an Equipment Operator IV for its operations in Williston, North Dakota.  (*Id.* at 4, ¶ 22.)  Weatherford requires its Equipment Operators to have a commercial driver's license (CDL), or to obtain one within ninety days of being hired.  (ECF No. 34 at 4, ¶ 12; ECF No. 34-5 at 3.)

## C.   Cole's Physical Exam

Cole's first week with Weatherford was actually an orientation held from March 5 through March 9, 2012, at a hotel in Denver.  (ECF No. 34 at 4, ¶¶ 13–14.)  On March 7 (Wednesday) of that week, in the late afternoon, Cole underwent a physical examination required by the Department of Transportation (DOT) for any individual intending to obtain or maintain a CDL.  (*Id.* ¶ 15; ECF No. 36 at 2, ¶¶ 4–5.)  Cole disclosed his back surgery and heart stent procedure to the examining physician,

Dr. Martin Kalevik.  (ECF No. 34 at 5, ¶ 16.)  Dr. Kalevik then informed Cole that he would need additional information from Cole's personal cardiologist and orthopedist before completing the physical exam.  (*Id.*)  Dr. Kalevik gave Cole certain release forms to facilitate transmission of his medical information from his other doctors and asked Cole to arrange for those doctors to send that information.  (*Id.* ¶ 17.)  Cole "understood that Dr. Kalevik would issue him a DOT medical card as soon as he received appropriate records from Mr. Cole's physicians," but Cole "did not have a reasonable opportunity to communicate with his physicians that day because his exam ended at the close of business."  (*Id.* ¶ 18.)[1]

Soon after Cole left Dr. Kalevik's office, someone from that office telephoned Weatherford and spoke with Phyllis Wynn-Grove, who was, at the time, a Weatherford human resources representative (she is no longer employed with Weatherford).  (ECF No. 34 at 5, ¶ 19; ECF No. 47, ¶ 19.)  Precisely what Dr. Kalevik's office said to Wynn-Grove is unclear.  Wynn-Grove's deposition testimony vacillates between, on the one hand, suggesting that Dr. Kalevik's office said nothing more than that Weatherford should look closely at Cole's medical history, and, on the other hand, that Dr. Kalevik's

---

[1] Weatherford admits that Cole told Dr. Kalevik about his back surgery and stent procedure, but neither admits nor denies Cole's assertion that Dr. Kalevik asked Cole to supply more information from his personal physicians.  (ECF No. 47 at 3, ¶ 16.)  The Court therefore deems Cole's assertion admitted.  As for Cole's assertions regarding (i) the release forms, (ii) his understanding that he would receive his DOT medical card upon supplying the appropriate information, and (iii) his lack of a reasonable opportunity to communicate with his physicians before the end of the business day, Weatherford states that it is "without sufficient information in the record or otherwise to form a belief as to the truth of [those] statements . . . and therefore denies them."  (*Id.* ¶¶ 17–18.)  Given that discovery has closed, this is not an appropriate denial.  *See* WJM Revised Practice Standards III.E.5 ("Any denial shall be accompanied by a brief factual explanation of the reason(s) for the denial and a specific reference to admissible evidence in the record supporting the denial.").  The Court therefore deems these assertions admitted as well.

office specifically discussed Cole's previous heart and back conditions and the need for Cole to obtain more information from his own doctors.  (ECF No. 46-9 at 2–4.)

Based on Wynn-Grove's deposition testimony, Cole further claims that Dr. Kalevik's office also spoke with Wynn-Grove's boss, Weatherford human resources supervisor Michelle Brannon, at the same time it spoke with Wynn-Grove.  (ECF No. 34 at 5, ¶ 19.)  Wynn-Grove's testimony, however, is somewhat unclear on this point as well.  At one point Wynn-Grove states that she and Brannon "both spoke with" Dr. Kalevik's office.  (ECF No. 46-9 at 2, 4.)  Later, however, Wynn-Grove suggested that she took the phone call and, as she learned things from Dr. Kalevik's office, she relayed the information to Brannon, who was apparently in the same room.  (*Id*. at 3.)

In any event, at least three matters are undisputed.  First, Dr. Kalevik's office did not report to Weatherford either that Cole had passed or that he had failed his physical.  (ECF No. 34 at 6, ¶ 22; ECF No. 47 at 4, ¶ 22.)  Second, Dr. Kalevik's office never told Weatherford that Cole could not pass a DOT physical.  (ECF No. 34 at 6, ¶ 21.)  Third, Brannon reacted to the information from Dr. Kalevik's office—whatever it was—by concluding that Cole "would be considered a high risk and that she [Brannon] did not see the need to go any further with him."  (*Id*. ¶ 26.)[2]

---

[2] Weatherford responds to this third factual assertion as follows: "Admitted that Wynn-Grove testified that Brannon 'basically said' to Wynn Grove [*sic*] 'that [Plaintiff] would be considered a high risk and that [Brannon] really didn't see any need to go any further.'  Denied that this statement was made to Cole or was made at the time of Cole's termination." (ECF No. 47 at 4, ¶ 26 (citations omitted).)  Notably, this response does not object on hearsay grounds and does not claim that Wynn-Grove inaccurately recalled what Brannon said to Wynn-Grove.  Accordingly, the Court deems it admitted that Brannon spoke the words reported by Wynn-Grove.

**D.    Cole's Termination**

Sometime before the next morning, Brannon made the decision to terminate

Cole's employment (ECF No. 46 at 7, ¶ 68),[3] although the task of breaking the news to

Cole fell to Wynn-Grove.  Thus, on the morning of Thursday, March 8, 2012 (*i.e.*, the

morning after Cole's physical), Wynn-Grove pulled Cole out of orientation meetings to

inform him that he had been terminated.  (ECF No. 34 at 6, ¶ 27.)  According to Cole,

Wynn-Grove specifically said, "Mr. Cole[,] because of your health history you cannot

work for Weatherford."  (ECF No. 34-7 at 5.)  Wynn-Grove testified that she took a

much less direct approach:

> [F]irst, I had to tell him, "Mr. Cole, based on the information
> we've received, we don't think this is a good fit for
> Weatherford."  And that's when he said to me, "Well, why is
> that?" . . .  And I said, "Basically, just looking over
> everything, we just don't feel this is a good fit."  He kept
> pressing.  He said, "If it's about my heart, my doctor can
> submit information."

(ECF No. 46-9 at 5 (internal quotation marks inserted for clarity).)  According to Cole,

Wynn-Grove replied by stating, "it doesn't matter, you can't work for Weatherford."

(ECF No. 34-7 at 5.)

The following day (Friday, March 9), Cole met with Brannon to protest his

treatment "and insisted that he could pass the physical if he was provided the

opportunity to submit the medical records to Dr. Kalevik.  Ms. Brannon said the matter

---

[3] In response to Cole's statement of facts, Weatherford only admits that Brannon "participated in" the decision to fire Cole.  (ECF No. 57 at 5, ¶ 68.)  In argument, however, Weatherford affirmatively relies on the notion that Brannon was "the decision-maker with respect to termination of [Cole's] employment."  (ECF No. 47 at 8.)  The Court therefore deems it admitted that Brannon made the decision to fire Cole.

was closed, and she would not talk to him about it further." (ECF No. 34 at 7, ¶ 33.)[4]

At this same meeting, Brannon offered Cole "a warehouse position." (ECF No. 36 at 7, ¶ 42; ECF No. 46 at 8, ¶ 76; ECF No. 47-4 at 5–6.) According to Cole, this position paid $15.10 per hour (as opposed to $22.00 per hour for an Equipment Operator IV) and required permanent relocation to North Dakota (as opposed to Equipment Operator IV, which permitted the employee to stay in company facilities while on duty and to be flown home while off duty). (ECF No. 46 at 8, ¶¶ 77–78.) Cole says that he rejected the warehouse position given these terms. (*Id*. ¶ 79.) Weatherford denies that these were the terms of the warehouse position, submitting evidence that the position had a pay range between $13.99 and $20.29 per hour, and that others in this position would rotate between their homes and North Dakota. (ECF No. 57 at 7, ¶¶ 77–78.)

Regardless, less than three weeks later, Cole arranged for and passed a DOT physical. (ECF No. 34 at 7, ¶ 35.)

## III. ANALYSIS

ADA discrimination claims follow the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gulley-Falzgraf v.*

---

[4] Once again, this is an assertion from Cole that the Court must deem admitted by Weatherford. Weatherford responds to the assertion by admitting that it "accurately paraphrases Cole's testimony that he told Brannon he could pass the DOT physical if he presented additional medical records to Dr. Kalevik," but denying "that the cited testimony supports that Cole met with Brannon on the day prior [*sic*?] or that Brannon stated 'the matter was closed.'" (ECF No. 47 at 6, ¶ 33.) Weatherford does not deny that Cole actually said what he claims to have said, and the Court's review of the underlying deposition testimony fully supports Cole's characterization of what Brannon said. Weatherford does not object on hearsay grounds and, most strikingly, submits nothing from Brannon herself, giving her side of the story. Accordingly, Weatherford's response does not create a factual dispute.

*Cherry Creek Sch. Dist. No. 5*, 2013 WL 1313791, at *1 (D. Colo. Mar. 29, 2013).

Thus, Cole must first establish a *prima facie* case of disability discrimination.  If he

does, the burden shifts to Weatherford to articulate a legitimate, nondiscriminatory

reason for the allegedly discriminatory act.  If Weatherford carries that burden, the

burden shifts back to Cole to prove by a preponderance of the evidence that

Weatherford's reasons are a pretext for unlawful discrimination.  *See Thomas v. Avis*

*Rent a Car*, 408 F. App'x 145, 152 (10th Cir. 2011).

To establish a *prima facie* case of discrimination under the ADA, Cole must show

(1) he is disabled (or was "regarded as" disabled by Weatherford) as defined by the

ADA, (2) he is qualified to perform the essential functions of the Equipment Operator IV

position with or without reasonable accommodation, and (3) he suffered discrimination

as a result of his real or perceived disability.  *See Koessel v. Sublette Cnty. Sheriff's*

*Dep't*, 717 F.3d 736, 742 (10th Cir. 2013).  The Court will address each element in turn.

## A.     Presence of a Disability

Cole may establish the first element of a *prima facie* case by demonstrating

actual disability, a "record of" disability, or that Weatherford "regarded" him as disabled.

42 U.S.C. § 12102(1).

### 1.    Actual Disability

Weatherford argues that Cole cannot sustain his burden to prove an actual

disability.  (ECF No. 36 at 9–11.)[5]  The Court disagrees.

"The term 'disability' means * * * a physical or mental impairment that

---

[5] Cole does not cross-move to establish that he did have an actual disability as a matter of law, apparently preferring to save that issue for trial.  (*See* ECF No. 34 at 10 n.2.)

substantially limits one or more major life activities of such individual . . . ." 42 U.S.C.

§ 12102(1)(A).  A physical impairment is "[a]ny physiological disorder or condition . . .

affecting one or more body systems, such as [the] cardiovascular [system]."  29 C.F.R.

§ 1630.2(h)(1).  Cole claims that he continues to have a heart condition that requires

attention through medication, diet, and exercise.  (ECF No. 36 at 3, ¶ 16; ECF No. 46-3

¶ 2; ECF No. 46-5 at 2–3.)  This heart condition suffices to establish an impairment.

42 U.S.C.§ 12102(4)(D) ("An impairment that is . . . in remission is a disability if it would

substantially limit a major life activity when active.").

 The next question is whether a "major life activity" is affected by Cole's

impairment.  Major life activities include "the operation of a major bodily function,

including but not limited to . . . circulatory . . . functions."  *Id.* § 12102(2)(B); *see also*

29 C.F.R. § 1630.2(i)(1)(ii) ("Major life activities include * * * respiratory, circulatory,

[and] cardiovascular . . . functions.").  Essentially by definition, Cole's heart condition

satisfies this standard.

 The final question is whether the major life activity of circulatory functioning is

substantially limited by Cole's heart condition.  Notably, "[t]he determination of whether

an impairment substantially limits a major life activity shall be made without regard to

the ameliorative effects of mitigating measures such as * * * medication * * * or * * *

learned behavioral . . . modifications."  42 U.S.C. § 12102(4)(E)(i)(I) & (IV).  Thus, the

question is the effect of Cole's heart condition if he stopped taking his medication,

exercising, and eating healthily.  Cole nowhere explicitly states, "But for these

measures, I would have another heart attack."  But that is a reasonable inference from

the evidence he has presented (*see* ECF No. 46-3 ¶ 2; ECF No. 46-5 at 2–3), and the

Court must draw all reasonable inferences in his favor. *Adler*, 144 F.3d at 670.

Moreover, "[t]he term 'substantially limits' shall be construed broadly in favor of

expansive coverage, to the maximum extent permitted by the terms of the ADA.

'Substantially limits' is not meant to be a demanding standard." 29 C.F.R.

§ 1630.2(j)(1)(i). Finally, "ascertaining whether the impairment substantially limits the

major life activity is a factual question for the jury." *Doebele v. Sprint/United Mgmt. Co.*,

342 F.3d 1117, 1129 (10th Cir. 2003).

Given the foregoing, a reasonable jury could conclude that Cole's heart condition

is an actual disability under the ADA. Summary judgment must be denied on this point.

2.      Record of Disability, or "Regarded As" Disabled

The parties also challenge the other two bases for liability under the ADA: a

"record of" a disability or "being regarded as having" a disability. 42 U.S.C.

§ 12102(1)(B), (C). Specifically, Weatherford argues that Cole cannot sustain his

burden to prove either basis (ECF No. 36 at 11–16); and Cole argues that he was at

least "regarded as" disabled as a matter of law (ECF No. 34 at 9–11).[6] The Court finds

that the factual issues involved are mostly the same regardless of whether one looks at

the "record of" or "regarded as" prong. The Court will therefore analyze them together.

Under the "record of" test, "a plaintiff must have a history of, or have been

misclassified as having, an impairment that has substantially limited a major life

activity." *Rakity v. Dillon Cos., Inc.*, 302 F.3d 1152, 1159 (10th Cir. 2002) (internal

quotation marks omitted). As for the "regarded as" test,

---

[6] As with the question of actual disability, Cole does not cross-move on a "record of" disability, preferring to save it for trial. *See* note 5, *supra*.

> [a]n individual may qualify . . . in two ways: (1) a covered
> entity mistakenly believes that a person has a physical
> impairment that substantially limits one or more major life
> activities, or (2) a covered entity mistakenly believes that an
> actual, nonlimiting impairment substantially limits one or
> more major life activities.

*Koessel*, 717 F.3d at 742.

Here, both tests come down to the information conveyed by Dr. Kalevik's office on the evening of March 7, 2012.  It is undisputed that Brannon made the decision to terminate Cole in reaction to that information, but what precisely Brannon learned from Dr. Kalevik's office is not clear.  Cole relies on Wynn-Grove's testimony to claim that both Wynn-Grove and Brannon learned of Cole's heart and back history.  As discussed above, however, Wynn-Grove's testimony on this point is ambiguous.  *See* Part II.C, *supra*.  Wynn-Grove at times appears to be reporting what Dr. Kalevik's office said and at other times appears to be opining about Cole's condition generally.

Having thoroughly reviewed Wynn-Grove's deposition transcript several times, the Court finds that a reasonable jury could conclude that Wynn-Grove's recollection of the phone call was colored by information she may have actually learned after the phone call (*i.e.*, the specifics of Cole's medical history).  (*See* ECF No. 47 at 10 n.1.)  Indeed, Wynn-Grove's testimony is so generally non-linear that a reasonable jury could discount her entire recollection of the call from Dr. Kalevik's office.

The next question is whether this creates a material dispute of fact.  Weatherford claims it is "undisputed" that it "refused to allow Cole to work as an Equipment Operator IV because he was unable to obtain an updated DOT Medical Examiner's Certificate during the orientation."  (ECF No. 36 at 15, 21; *see also* ECF No. 47 at 9.)  Cole,

11

however, disputes this explanation (ECF No. 46 at 4, ¶ 45), and, to some degree, it conflicts with the truly undisputed evidence.  Specifically, it is undisputed that:

- Cole's physical examination took place in the late afternoon of March 7, 2012 (the third day of a five-day orientation);

- although Dr. Kalevik's office did not say either that Cole had passed or failed his physical, Brannon learned something from Dr. Kalevik's office in the early evening of March 7 and immediately made the decision to not to allow Cole to work as an Equipment Operator IV because he "would be considered a high risk";

- Cole was informed of his termination the next morning (*i.e.*, on the fourth day of orientation); and

- Cole asked to submit more information from his doctors, but both Wynn-Grove and Brannon insisted that Weatherford's decision was already final.

*See* Parts II.C & D, *supra*.  Given these facts, Weatherford cannot plausibly claim that it was motivated by Cole's supposed inability "to obtain an updated DOT Medical Examiner's Certificate during the orientation," because Weatherford did not give Cole until the end of orientation to obtain the needed certificate.  At most, Weatherford could claim that it made its decision based on Cole's failure to obtain the certificate on the afternoon of March 7.

In the light most favorable to Cole, the evidence could establish that Brannon learned of Cole's heart and back condition from Dr. Kalevik's office and that Brannon decided Cole "would be considered a high risk" specifically because of those conditions.

Under this view of events, Weatherford acted based on Cole's "record" of a disabling condition (as conveyed by Dr. Kalevik's office), or at least "regarded" Cole as disabled. *See, e.g.*, 29 C.F.R. § Pt. 1630, App., comment regarding 29 C.F.R. § 1630.2(*l*) ("an employer who terminates an employee with angina [a symptom of heart trouble] from a manufacturing job that requires the employee to work around machinery, believing that the employee will pose a safety risk to himself or others if he were suddenly to lose consciousness, has regarded the individual as disabled").

In the light most favorable to Weatherford, however, the evidence could establish that Brannon made her decision with respect to Cole based solely on learning that an unspecified *something* had prevented him from passing his physical that afternoon. As Weatherford points out, numerous conditions can prevent an individual from passing a DOT physical, and not all of them (*e.g.*, illegal drug use) would constitute a disability under the ADA. (ECF No. 36 at 15–16.) From this perspective, although Brannon's decision might have been hasty and ill-informed, Weatherford could not be said to have acted based on a record of disability, or to have regarded Cole as disabled.

The Court concludes that a reasonable jury could adopt either view of the evidence. Thus, a genuine dispute of material fact prevents summary judgment for either party on the question of whether Weatherford had a record of, or was regarded as, disabled.

## B.    "Qualified"

Both parties move for judgment as a matter of law regarding whether Cole was qualified to be an Equipment Operator IV. (ECF No. 34 at 12–13; ECF No. 36 at

16–18.)  "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  "Determining whether a particular function is essential is a factual inquiry" regarding whether removing a certain requirement "would fundamentally alter the position."  *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1191 (10th Cir. 2003) (internal quotation marks omitted).

No party disputes that possession of a CDL is an essential function of the Equipment Operator IV position, and no party disputes that passing a DOT physical is a prerequisite to obtaining or maintaining a CDL.  (ECF No. 36 at 4–5, ¶¶ 23–25.)  Weatherford accordingly argues, "Because Cole did not pass the DOT medical examination . . . during the orientation, he was not qualified for the Equipment Operator IV position at the time of his termination by Weatherford."  (ECF No. 36 at 17.)  As noted above, however, it is undisputed that Weatherford did not give Cole until the end of orientation to pass the exam, but decided to terminate him immediately after learning that he had not passed his physical.  The most Weatherford can argue, then, is that Cole was not qualified because he did not pass his medical exam on his first visit to the examining doctor.

Regardless of how Weatherford frames this argument, the Court believes that Weatherford somewhat misses the point.  Whether an individual is "qualified" turns on the "essential functions" of the job.  42 U.S.C. § 12111(8).  The essential function at issue here is not the ability to pass a DOT physical on the first try, but the possession of a current CDL.  Weatherford explicitly gives its new hires ninety days to obtain a CDL.

14

(ECF No. 34 at 4, ¶ 12; ECF No. 34-5 at 3.)   *Cf.* 42 U.S.C. § 12111(8) ("if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job").

The Court does not agree with Cole that this entire ninety-day period "logically extends to physical exams as well" (ECF No. 34 at 13), considering that passing the physical is just one part of obtaining a CDL (ECF No. 47 at 13 n.5).   Nonetheless, that ninety-day window is *at least* evidence from which a reasonable jury could conclude that possessing a current DOT medical certificate by the third day of employment (or even by the end of orientation) is not part of the "essential function" of possessing a current CDL within ninety days of hire.

The Court finds, moreover, that no reasonable jury could conclude that Cole was anything other than qualified.  It is undisputed that:

- Dr. Kalevik's office did not report to Weatherford either that Cole had passed or that he had failed his physical;

- Dr. Kalevik's office never told Weatherford that Cole could not pass a DOT physical;

- Weatherford would not allow Cole to submit any medical documentation following its announcement of his termination; and

- Cole in fact passed a DOT physical about three weeks after his termination.

*See* Parts II.C & D, *supra*.

In addition, Weatherford submits no evidence of any obstacle apart from the medical examination that would have prevented Cole from obtaining a CDL.  And,

Weatherford submits no evidence, or even explanation, of why the essential function of

obtaining a CDL required anything more rapid than the process that actually played out

in Cole's case—or, in other words, how the Equipment Operator IV position would be

"fundamentally alter[ed]" by allowing a new hire up to three weeks of a ninety-day

window to obtain the medical certificate necessary for a CDL.  *Davidson*, 337 F.3d at

1191 (internal quotation marks omitted).  Accordingly, pursuant to Federal Rule of Civil

Procedure 56(g), Cole is entitled to summary judgment that he was qualified to perform

the Equipment Operator IV position.

**C.   "Suffered Discrimination as a Result of His Real or Perceived Disability"**

An employer discriminates on the basis of disability by, among other things,

terminating an employee because of that disability.  29 C.F.R. § 1630.4(a)(1)(ii).

Whether Cole suffered termination as a result of an actual disability, a record of

disability, or a perceived disability turns largely on the disputed evidence already

discussed regarding what Brannon learned from Dr. Kalevik's office on the evening of

March 7.  *See* Part III.A.2, *supra*.  If Brannon learned of Cole's heart and back history, it

is a reasonable inference in light of all the other evidence that she decided to terminate

Cole because of that history.  *See Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 748

(10th Cir. 1999) ("to establish the third element of a prima facie case of disability

discrimination, the plaintiff must show that she was terminated because of her disability,

or that the employer terminated the plaintiff under circumstances which give rise to an

inference that the termination was based on her disability" (internal quotation marks

omitted)).  On the other hand, if Brannon learned only that Cole had not passed his

medical exam that afternoon, then Brannon did not necessarily know of any ADA-protected disability and could not discriminate on that basis. *See Simmons v. Potter*, 2010 WL 3002038, at *11 (D. Colo. July 29, 2010) ("An employer cannot discriminate against an employee on their disability if they did not even know of the disability."), *aff'd sub nom. Simmons v. Donahoe*, 432 F. App'x 752 (10th Cir. 2011).

Given this dispute, summary judgment is inappropriate for either party on the question of whether Weatherford discriminated against Cole based on an actual or perceived disability.

**D.    Remainder of the Burden-Shifting Analysis**

The foregoing establishes that Cole has sufficient evidence from which a reasonable jury could find that he has carried his burden to present a *prima facie* case of discrimination. *See Thomas*, 408 F. App'x at 152. And in light of the foregoing, the remaining steps of the burden-shifting analysis need little discussion. Weatherford claims that terminating an employee for failing to obtain a DOT medical certification is a legitimate, nondiscriminatory reason for its action against Cole. (ECF No. 36 at 21–22.) The Court agrees that, in the abstract, this could be a legitimate, nondiscriminatory reason for termination. However, the same evidence that could carry Cole's burden to establish a *prima facie* case could also allow a jury to reasonably conclude that Weatherford's explanation is pretextual. In particular, the knowledge that Brannon may have had from Dr. Kalevik's office when deciding to terminate Cole, the timing of that decision, and both Brannon's and Wynn-Grove's refusal to grant Cole more time to obtain information from his doctors all reasonably suggest that Weatherford terminated

Cole because of an actual or perceived disability, not simply because he failed to obtain a DOT medical certification on the afternoon of March 7.  Which story to believe is a matter for the jury to resolve.

E.     **"Transitory and Minor"**

Weatherford raises a separate defense specifically to Cole's "regarded as" theory of disability discrimination.  (ECF No. 47 at 10–11.)  An employer cannot be liable under the "regarded as" prong of the ADA if the real or perceived impairment motivating the employer's decision was "transitory and minor.  A transitory impairment is an impairment with an actual or expected duration of 6 months or less."  42 U.S.C. § 12102(3)(B).

"Whether the impairment at issue is or would be 'transitory and minor' is to be determined objectively."  29 C.F.R. § 1630.15(f).  Thus, an employer

> may not defeat "regarded as" coverage of an individual simply by demonstrating that it subjectively believed the impairment was transitory and minor; rather, the [employer] must demonstrate that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) both transitory and minor.

*Id*.  As illustrated by the following examples provided by the Labor Department, this standard essentially asks whether the disability the employer subjectively (and perhaps mistakenly) believed the employee to have is the kind of disability that is objectively transitory and minor:

> [A]n employer who terminates an employee whom it believes has bipolar disorder cannot take advantage of this exception by asserting that it believed the employee's impairment was transitory and minor, since bipolar disorder is not objectively transitory and minor.  At the same time, an employer that terminated an employee with an objectively "transitory and

18

> minor" hand wound, mistakenly believing it to be
> symptomatic of HIV infection, will nevertheless have
> "regarded" the employee as an individual with a disability,
> since the covered entity took a prohibited employment action
> based on a perceived impairment (HIV infection) that is not
> "transitory and minor."

29 C.F.R. Pt. 1630, App., comment regarding 29 C.F.R. § 1630.2(*l*).

Weatherford argues that "even if Brannon was aware of Cole's medical conditions, both conditions [*i.e.*, back and heart problems] were objectively 'transitory' and 'minor,'" because Cole himself did not believe he was limited by those conditions. (ECF No. 47 at 11.)  This, however, is not an objective analysis.  Rather, it is an analysis of Cole's subjective beliefs, which appear to be just as irrelevant as Weatherford's subjective beliefs.  Weatherford has offered nothing to establish that the sorts of back and heart problems Cole has suffered are objectively transitory and minor. Consequently, the Court cannot grant summary judgment on this question.

## F.    Reasonable Accommodations

Another basis for finding unlawful discrimination under the ADA is the employer's failure to make "reasonable accommodations to the known physical or mental limitations of [a disabled individual] who is an applicant or employee, unless such [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business."  42 U.S.C. § 12112(b)(5)(A).  This is only a basis for liability, however, to the extent that Cole can establish an actual disability or a record of one—it does not apply if Weatherford only "regarded" Cole as disabled.  *Id*. § 12201(h).

Assuming Cole can establish an actual disability or a record of one, both parties argue that they deserve summary judgment on reasonable accommodation grounds.

19

Cole argues that he was denied a reasonable accommodation as a matter of law because he asked for more time to submit medical records and was denied that opportunity.  (ECF No. 46 at 26.)  *See also* 29 C.F.R. § 1630.2(o)(1)(i) ("The term reasonable accommodation means * * * [m]odifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position . . . .").  Weatherford argues that it satisfied its duty to offer a reasonable accommodation by offering Cole the warehouse position, which Cole refused.  (ECF No. 36 at 20.)

Both of these arguments get bogged down in the question of precisely when Cole was terminated.  In particular, the parties dispute whether Cole was terminated as of the morning of March 8, 2012, when Wynn-Grove informed him that Weatherford would not be employing him as on Equipment Operator IV, or whether Cole was terminated as of some later date.  Both parties are internally inconsistent regarding their preferred answer, as well as the significance of the answer.

For example, Weatherford argues "it is undisputed that Cole did not request any accommodation [*i.e.*, more time to submit medical records] prior to being notified of his termination."  (ECF No. 47 at 14.)  To make this point doubly clear, Weatherford immediately repeats itself, but in greater detail: "It is undisputed that Cole waited to advise Weatherford of his need for additional time to submit medical documentation or otherwise passes DOT medical examination until after he was notified of his termination, at least 18 hours following his DOT medical examination."  (*Id*.)  Given that Cole's request for more time to submit records came on the morning of March 8, after Wynn-Grove informed him of Weatherford's decision (*see* Part II.D, *supra*),

20

Weatherford must mean that Cole was terminated no later than being informed of that decision by Wynn-Grove on the morning of March 8.  (*See also* ECF No. 57 at 13.)

However, Weatherford elsewhere asserts as a statement of material fact that it offered the warehouse position to Cole "[p]rior to Cole's termination."  (ECF No. 36 at 7, ¶ 42.)  That offer came on March 9.  (*See* Part II.D, *supra*.)  Weatherford also asserts that it "separated Cole's employment effective March 11, 2012."  (ECF No. 36 at 7, ¶ 45.)

Obviously Weatherford cannot hold both positions simultaneously.  Either it terminated Cole on March 8 (before he could request an accommodation), or on March 11 (after he requested an accommodation and after Weatherford offered the warehouse position, allegedly as an accommodation).

Cole, for his part, also presents conflicting accounts of his termination date.  Cole, in his motion, states that his termination was effective March 10, relying on a Weatherford interrogatory response stating as much.  (ECF No. 34 at 3, ¶ 7; ECF No. 45 at 3.)  But Cole, in response to Weatherford's motion, changes course and relies on testimony from Weatherford's 30(b)(6) representative stating that Cole was already terminated when he was offered the warehouse position.  (ECF No. 46 at 8, ¶ 76.)  Again, it cannot be both.

Perhaps the only real dispute here is a difference between effective termination and *pro forma* termination (*e.g.*, for accounting purposes).  However, none of the parties argues this distinction.  Thus, all the Court can confidently conclude is that both parties believe the timing of Cole's termination is important, but both parties also adopt internally contradictory positions with respect to that timing.  Suffice it to say this

presents a dispute of fact, precluding any resolution by summary judgment.

### IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    Plaintiff's Motion for Partial Summary Judgment (ECF No. 34) is GRANTED IN

PART and DENIED IN PART.  The Court holds as a matter of law that Cole was

qualified to perform the Equipment Operator IV position.  Plaintiff's Motion is

otherwise denied;

2.    Defendants' Motion for Summary Judgment (ECF No. 38) is DENIED; and

3.    This matter REMAINS SET for a four-day jury trial beginning on October 13,

2015, with a Final Trial Preparation Conference at 3:00 p.m. on September 25,

2015 in Courtroom A801.


Dated this 23rd day of June, 2015.

BY THE COURT:

William J. Martínez
United States District Judge